**UNITED STATES of America**

v.

**David HILL.**

**No. 79–250–CR–EPS.**

United States District Court,
S. D. Florida.

Nov. 30, 1979.

Ian M. Comisky, Asst. U. S. Atty., Miami, Fla., for plaintiff.

Donald I. Bierman, Miami, Fla., for defendant.

## OPINION AND ORDER DISMISSING INDICTMENT

SPELLMAN, District Judge.

This matter is before the Court for decision on the filing by the Defendant of a motion to dismiss the indictment pursuant to Title 28, U.S.C. § 1867. The motion should be granted and the indictment dismissed.

### I. FACTUAL BACKGROUND

The Defendant in this case is charged by way of indictment in three counts filed July 20, 1979 charging the Defendant with violation of Title 26, § 7201 U.S.C., income tax evasion, for the years 1972, 1973 and 1974. This indictment was returned by Grand Jury No. 79–1 (MIA).

The Defendant in this case was originally represented by one Richard B. Wallace, Esq. who appeared at his arraignment on July 26, 1979. On or about August 1, 1979 said counsel filed a letter with the Court indicating that the attorney for the Defendant in all future matters would be Donald I. Bierman and on or about that same date Mr. Bierman's name appeared representing the Defendant through several members of his firm, primarily one Neal Sonnett, Esq.

On or about that same date a motion was filed for extension of time in which to file defensive motions by one of the members of the firm indicating that Mr. Bierman was out of the country until August 25, 1979 and that his partner, Mr. Sonnett, was to handle the preparation of defense motions in the cause but due to a death in the family the same made it impossible thereby requesting an extension of time be granted until September 7, 1979 for the filing of the motions in the cause.

Almost simultaneous with the filing of that motion was a motion for continuance by the Defendant again averring that the Defendant's counsel, Donald I. Bierman, "who is the only member of the firm familiar with the facts of this case" was out of the country and not expected to return

until August 25, 1979 which motion was consented to by the U.S. Attorney.

On or about the time of the filing of the motion for continuance there was in fact filed with the Court a motion for bill of particulars, a motion for additional production, inspection and copying, motion to disclose, motion for early disclosure of Jencks Act material, special motion for production of statements and on August 9, 1979 an Order continuing the trial of the cause was entered by the Honorable Sidney M. Aronovitz, United States District Judge, specifically averring to the fact that "counsel for the Defendant is unavailable until August 25, 1979 and has requested a continuance of the case consented to by Government counsel and accompanied by a waiver of speedy trial executed by the Defendant" which Order reset the trial of the cause for the two-week period commencing November 19, 1979.

On August 14, 1979, a notice to parties was filed by the Honorable Sidney M. Aronovitz, United States District Judge, notifying all parties who had indictments returned by Grand Jury 79–1(MIA) that an Order had been entered on August 9, 1979 by the Honorable C. Clyde Atkins, Chief Judge, In Re: Grand Jury 79–1(MIA), and attaching thereto said Order which was entitled Order Reviewing Deferral or Excusal of Jurors.

The August 9th Order of Judge Atkins indicated that of the 77 names that were drawn from the voters' registration list of the Counties comprising the above Division, five excusals were granted by the Chief Judge by two Orders dated February 9, 1979 "as approved for by the plan for the random selection of grand and petit jurors of the Southern District of Florida adopted pursuant to 28 U.S.C. § 1886 [sic] and approved by the reviewing panel of the Fifth Circuit Judicial Council." Five prospective Grand Jurors were denied excusal by an Order dated February 9, 1979.

The Order went on to state, however, that some 31 jurors were thereafter excused or deferred from jury service on that particular Grand Jury by virtue of the utilization by the Clerk's Office of the stamped name of Chief Judge C. Clyde Atkins on three Orders dated February 9, 1979 and two Orders dated February 16, 1979.

Although the Order of August 9, 1979 indicates that a substantial number of these individuals might have in fact been excused by the Chief Judge, the fact is that the Order indicates unequivocally that such action was taken without the knowledge and consent of the Court through the unilateral action of the Clerk's Office.

On August 22, 1979, the Government, through the United States Attorney, moved for continuance and for an extension of time in which to comply with an order of the Magistrate, citing as reasons therefor that not only the Assistant U.S. Attorney handling said case would be unavailable until August 27, 1979 but averring affirmatively that "counsel for the defense, Donald Bierman, is on vacation for the remainder of the month of August 1979" and that the Government would "immediately contact Mr. Bierman upon the latter's return from vacation on or about September 1, 1979."

On August 31, 1979, a sworn motion to dismiss the indictment pursuant to Title 28 U.S.C. § 1867 was filed by the Defendant HILL incorporating what has come to be known as the "Jenison Motion" but alleging, as additional ground, the factual matters set forth in Judge Atkins' Order of August 9, 1979. In this respect, the motion averred that "31 persons represent a large percentage of the Grand Jury Pool and, therefore, the random selection system, if found to be fair pursuant to the first three paragraphs of this Motion, has been severely damaged by these deferrals."

Affidavits have been filed in support of the motion indicating that in fact counsel for the Defendant, Mr. Donald Bierman, did not return to his office until August 27, 1979; and likewise indicating that Mr. Sonnett, who had prepared the pretrial discovery motions that were filed in the early part of August, departed the District on August 12, 1979 and did not in fact return to the District until August 26, 1979.

No showing has been made by the Defendant in the present posture of the record as to any constitutional infirmities which occurred in the empanelment of Federal Grand Jury 79–1(MIA). The Government, however, contends that there likewise has been no showing that there has been a "substantial failure" to comply with the provisions of the Jury Selection and Service Act of 1968 and that even if there was, the sworn motion to dismiss was not timely filed.

## II. GOVERNING LAW

Title 28, United States Code, § 1867(a) provides as follows:

"In criminal cases, before the voir dire examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier, the defendant may move to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with the provisions of this title in selecting the grand or petit jury."

█ The above-quoted provision as the same applies to the instant case places two burdens on the Defendant. First, it must be shown that the motion to dismiss the indictment was filed "within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor." Secondly, the Defendant's motion to dismiss must be "on the ground of substantial failure to comply with the provisions of (the Jury Selection and Service Act of 1968) in selecting the grand * * * jury."

## III. CONCLUSIONS OF LAW

### A. SUBSTANTIAL NATURE OF THE FAILURE TO COMPLY

█ As so astutely pointed out by counsel for the Government, Congress did not intend that "mere technical deviations" of the jury selection process would be tantamount to a substantial failure to comply with that process (*United States v. Davis*, 546 F.2d 583 [5th Cir. 1977]).

█ However, the Fifth Circuit Court of Appeals in the *United States v. Evans*, 526 F.2d 701 (5th Cir. 1976), speaking through Circuit Judges Wisdom, Gewin and Ainsworth, clearly recognized that it was incumbent upon the Court to determine whether or not there had been a substantial compliance with the Act in each particular circumstance and where such a "substantial failure to comply" was shown that that criteria had been met.

The *Evans* case has been cited by both parties, i. e., by the Government to establish that what occurred in the instant case did not constitute a substantial failure and by the Defendant, distinguishing the same, contending that the facts in this case pass the threshold established.

The Court concurs in the latter view.

In the *United States v. Evans, supra*, the factual situation was somewhat analogous in that the Clerk set about to excuse a number of individuals rather than the Court doing so officially.

The facts as outlined in the opinion (526 F.2d 703, 705) indicate that, of a total group of 7,915 names that were randomly drawn from the voters' registration list for the purposes of serving on both grand and petit juries, the Clerk determined that 1,878 should be excused, exempted or disqualified. Moreover, although the evidence indicated that most of these decisions were made basically by the Clerks themselves, there was consultation with the Chief Judge and that he had in fact authorized the Deputy Clerks to grant the excuses and was fully aware of the course of conduct being pursued. This amounted to approximately 25% of the total contemplated jurors utilized by the Middle District of Florida with "[t]he remaining 5,440 names * * * placed in the qualified jury wheel. Both the grand jury that indicted the appellants and the petit jury that tried them were drawn from this qualified wheel (526 F.2d 704)."

In the instant case, a much different picture developed. We are not here dealing

with the selection of a grand jury of not less than 18 nor more than 23 jurors and a petit jury of 12 or a total of not less than 30 nor more than 35 being selected from a qualified jury wheel of 5,440 names. Rather we are dealing with the exclusion of 31 individuals, of some 77 names that were randomly selected from the voters' registration list to serve on a *single* grand jury. One can readily ascertain the disparity between the selection of 30 to 35 jurors to serve on a grand and petit jury in relationship to 5,440 and the similar relationship of 18 to 23 jurors being selected from some 46 jurors after 31 of the original 77 had been excused.

There is, moreover, no similar characteristic with the *Evans* case insofar as consultation with the Chief Judge or his awareness of the course of action being pursued by the Clerk.

■ In the instant case, it is apparent from the Order of August 9, 1979 that Judge Atkins was totally unaware of what was occurring and that the action was neither taken pursuant to consultation with him nor at his direction. This is even more apparent when one gleans from said Order that three of the individuals excused by the Clerk the Court had in fact declined to excuse by virtue of his original Order of February 9, 1979.

This Court is not unmindful of the further statements contained in said Order reflecting what the distinguished jurist and Chief Judge of this Court might have done had he been confronted with similar requests. However, this Court cannot help but speculate that Judge Atkins' ultimate decision to limit selection of Grand Jury 79–1(MIA) to the 46 individuals remaining of the 77 might not have been different if he had been informed of the unauthorized conduct of the Clerk prior to empaneling said jury.

It is the view of this Court that the Jury Selection and Service Act of 1968 and the Congressional intent in passing Title 28 § 1867 was not to impose the burden upon the Court to second-guess what it may have done in a particular situation where the Clerk of the Court chooses to act without authority of the random selection of grand and petit jurors for the Southern District of Florida as approved and adopted by the reviewing panel of the Fifth Circuit Judicial Council and this Court likewise will not indulge in such presumptions.

It is the finding of this Court that the criteria set forth in the *United States v. Evans* is met and that there has in fact been established a substantial failure to comply with the aforesaid Act and the aforesaid plan.

### B. TIMELINESS OF THE MOTION

The question of timeliness of the motion has given the Court great concern. In arriving at its decision the Court has reviewed the numerous decisions of the Fifth Circuit Court of Appeals in the cases of *United States v. DeAlba-Conrado*, 481 F.2d 1266 (5th Cir. 1973); *United States v. Kennedy*, 548 F.2d 608 (5th Cir. 1977), *cert. denied* 434 U.S. 865, 98 S.Ct. 199, 54 L.Ed.2d 140 (1977); *United States v. Rodriguez*, 588 F.2d 1003 (5th Cir. 1979); and *United States v. Merlino*, 595 F.2d 1016 (5th Cir. 1979). The Court is likewise not unmindful of the First Circuit Court of Appeals' recent pronouncement in the case of *United States v. Foxworth*, 599 F.2d 1 (1st Cir. 1979) in which the Court very strictly applied the seven-day rule. These pronouncements appear to be nothing more than a vocalization of what the Court perceives to be the necessity for strict adherence to the requirement as enunciated by the Court in the *United States v. Kennedy* wherein it is stated (548 F.2d at 613):

"In the Act, Congress set out a uniform, relatively strict scheme for jury selection. Congress included a new remedy for substantial violations of the Act, regardless of whether the litigant challenging the jury had been prejudiced by the jury selection. As a price for this remedy, Congress was entitled to exact strict compliance with formal procedural rules."

However, within the context of that same case can be found the further pronounce-

ment of the Court wherein it is stated (548 F.2d at 613):

" * * * The legislative history makes clear that this requirement was considered independently important as a means for discouraging spurious challenges filed for dilatory purposes. The reports of both Houses contain this comment regarding the sworn statement:

'This threshold requirement to a successful challenge will make it possible for the judge to review a challenge motion and swiftly dispose of it if it fails, on its face, to state a case for which a remedy could be granted.'

H.R.Rep. No. 1076, 90th Cong., 2d Sess. (1968), reprinted in 1968 U.S.Code Cong. & Admin.News, pp. 1792, 1806; S.Rep. 891, 90th Cong., 1st Sess. 33 (1967)."

*    *    *    *    *    *

" * * * Absent some indication from particular circumstances that counsel could not reasonably have been expected to comply with the procedural prerequisites to a statutory challenge to the jury, the claim under the Act will be forfeited by noncompliance."

■ Taking into consideration the legislative intent and the indication with regard to particular circumstances as quoted above, it is the opinion of the Court that it was never the intent of Congress to preclude the filing of a motion such as in the instant case, that is to say, that it was never the intent of Congress that a Court, based on these particular circumstances and on the circumstances of counsel, should find that such motion was in fact untimely.

Certainly there is no question that the legislative intent of utilizing § 1867 as a means for discouraging spurious challenges filed for dilatory purposes should be recognized. It is the opinion of the Court in the instant case that the challenge is neither spurious nor the purpose dilatory.

Moreover, there was more than some indication from the particular circumstances surrounding this case that counsel could not reasonably have been expected to comply with the procedural prerequisites. Not only did the original motion for extension of time allude to defense counsel's absence, but the motion for continuance filed August 7, 1979 joined in by the U.S. Attorney likewise established the same. Moreover, the U.S. Attorney's motion filed eight days after the notice upon which the Government relied alludes to defense counsel's absence.

The notice to parties was dated August 14, 1979 and admittedly received in counsel's office August 16, 1979. This would have required filing under "strict compliance" with the Rule by August 23, 1979. The motion was in fact filed August 31, 1979.

It is the finding of this Court that the particular circumstances indicated based on the uncontroverted facts before this Court are that counsel could not have reasonably been expected to comply with the procedural prerequisites to a statutory challenge to the jury under the Act within the seven-day period and that he did in fact file said motion within seven days after he could have discovered by reasonable diligence the ground therefor.

## IV. ORDER OF DISMISSAL

Based upon the above and foregoing, it is

ORDERED and ADJUDGED that the sworn motion to dismiss the indictment pursuant to 28 U.S.C. § 1867 be and the same is hereby granted and that said indictment be and the same is hereby dismissed without prejudice to the Government seeking return of a new indictment pursuant to Title 18 U.S.C. § 3288.