STATE of Wisconsin, Plaintiff-Appellant,

v.

Chambeous COBLE, Defendant-Respondent-Petitioner.

Supreme Court

*Nos. 80–505–CR, 80–517–CR. Argued November 26, 1980.—*
*Decided February 2, 1981.*

(Also reported in 301 N.W.2d 221.)

For the petitioner there was a brief by *Dennis P. Coffey* and *Coffey & Coffey* of Milwaukee, and oral argument by *Dennis P. Coffey*.

For the respondent the cause was argued by *Mary V. Bowman,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

Amicus curiae brief was filed by *Gerard S. Paradowski,* acting corporation counsel, Milwaukee county.

SHIRLEY S. ABRAHAMSON, J. The issues on review are whether the Milwaukee county jury selection procedure for preparing the jury list complies with the statutory requirements of chapter 756, Stats., and, if it does not comply, whether the deviations from the statutes require reversal of the orders of the circuit court and of the defendant's conviction upon a verdict of guilty. We conclude that the Milwaukee county jury selection procedure for preparing the jury list contravenes chapter 756, Stats., and we direct that it be changed to comport with the statutes. The conviction, however, is not reversed.

## I.

Defendant Chambeous Coble was charged with endangering safety by conduct regardless of life in violation of sec. 941.30, Stats. On the day scheduled for trial, March 17, 1980, before a jury was drawn, defense counsel moved for a continuance on the ground that the jury selection process used in Milwaukee County violated the state statutes and the defendant's rights under the state and federal constitutions.[1] The hearing on the motion began immediately and was continued to the next

---

[1] No one asserts that the objection was not made timely or that the defendant did not properly preserve his objection. *Cf. Brown v. State,* 58 Wis.2d 158, 164, 205 N.W.2d 566 (1973); *State v. Nutley,* 24 Wis.2d 527, 538, 129 N.W.2d 155 (1964), *cert. denied* 380 U.S. 918 (1965).

day at which time the Milwaukee county district attorney moved to strike "the entire venire (jury panel)" on the grounds that the jury commissioners had failed to comply with secs. 756.01, 756.02, and 756.04, Stats., and that the state is entitled to a fair trial, a fair and impartial jury and a "legally and statutorily constituted jury panel." The state also moved to impanel new and additional jurors and joined the defendant in moving for a continuance. The testimony of Ronald Witkowiak, district court administrator for the First Judicial District, Roman Witkowiak, a Milwaukee county jury commissioner, and Victor Manian, chief judge of the First Judicial District, was presented at the hearing on the motions. At the conclusion of the hearing, the circuit court denied the defense and prosecution motions to strike the jury array and jury panel, to impanel additional jurors, and to grant a continuance.

The defense and the prosecution immediately filed petitions to the court of appeals for leave to appeal, sec. 808.03(2), Stats., and for temporary relief in the form of a stay of the trial proceedings pending decision on the appeal. On March 20, 1980, the court of appeals granted the petitions for leave to appeal, consolidated the appeals, and denied the stay. Permission to appear as a friend of the court was granted Milwaukee County Chief Judge Victor Manian. The appeal was expedited, and oral argument heard on March 25, 1980.

Trial on the charge of endangering safety commenced on March 18, 1980. On March 20, 1980, the jury returned a verdict finding the defendant guilty.

The court of appeals concluded that the commissioners acted within their statutory powers in exempting, excluding or disqualifying persons from the list of potential jurors on the ground of infirmity because of a physical condition, but that they exceeded their statutory powers in excluding or excusing persons from the list of pro-

spective jurors for reasons related to hardship and unwillingness to serve. *See State v. Coble,* 95 Wis.2d 717, 291 N.W.2d 652 (Ct. App. 1980).

Although the state's brief in this court supports the decision of the court of appeals, at oral argument the state reverted to the position taken earlier by the Milwaukee county district attorney in the circuit court and in the court of appeals and argued that the Milwaukee county jury selection procedure does not conform to statutory requirements. We agree with the position taken by the parties, and conclude that the Milwaukee county jury selection procedures for preparing the jury list transgress the statutes.

## II.

We begin by comparing the procedure for preparing the jury list set forth in chapter 756, Stats., with that used in Milwaukee county.

The legislature requires the three jury commissioners appointed in each county, sec. 756.03, Stats., to provide a county-wide list of names of persons to serve as petit jurors. Sec. 756.04(2)(a), Stats.[2] The statutes direct

---

[2] Sec. 756.04(2)(a), Stats., provides:

"(2)(a) The commissioners shall annually before the first Monday in April provide for each court covered by sub. (1), unless the judge or judges thereof otherwise order, one countywide list of not less than 600 names of persons to be drawn from the county to serve as petit jurors. The commissioners shall revise the list by striking from it the names of persons found by them to be ineligible for jury service, as provided in s. 756.01, and add to the list the names of additional persons as provided in s. 756.05. The list shall be certified by the commissioners as having been prepared in strict conformity with statutory requirements. The list shall also include a verified statement describing the manner in which the list was compiled or modified, including an enumeration of all public or private sources from which the names of the prospective jurors on the list were derived."

the jury commissioners to "determine eligibility for jury service by mailing to every prospective juror on the list a jury qualification form . . . which elicit[s] the information specified under sec. 756.01, Stats." Sec. 756.04 (2) (b) 1, Stats.[3] In addition, the jury commissioners are authorized to subpoena any person for examination as to qualifications for jury service and may investigate by inquiries or by other means any person's fitness for jury service. Sec. 756.03 (4), Stats.[4]

---

[3] Sec. 756.04(2) (b)1, Stats., provides:

"The commissioners shall determine eligibility for jury service by mailing to every prospective juror on the list a juror qualification form accompanied by instructions to fill out and return the form to the commissioners within 10 days after its receipt. The form shall elicit the information specified under s. 756.01 and shall contain a declaration that the responses are true to the best of the person's knowledge and an acknowledgement that upon a wilful misrepresentation of a material fact or failure to return the completed form within 10 days after its receipt the person may forfeit not more than $500. If the prospective juror is unable to fill out the form, another person may complete it and shall indicate that he or she has done so and the reason therefor. If it appears there is an omission, ambiguity or error in a return form, the commissioners shall send the incomplete form back to the person with instructions to make the necessary addition, clarification or correction and to return the form to the commissioners within 10 days after its receipt."

[4] Sec. 756.03 (4), Stats., provides:

"(4) The commissioners shall meet at such times as the discharge of their duties requires and at such times as the appointing judge or judges or any of them shall direct. Two commissioners shall constitute a quorum. They may subpoena any person to appear before them within the town, village or city where the person resides for examination as to any person's qualifications for jury service, and may compel the person to give testimony under oath. The commissioners may investigate by inquiries at any person's place of business, residence, or elsewhere, or by other means, his or her fitness for jury service. All public officers and employes shall furnish the commissioners, upon their request, the records and assistance which the commissioners deem proper to perform their duties."

The jury commissioners are required to revise the list by striking the names of those persons whom the commissioners find "ineligible for jury service, as provided in s. 756.01," (which is set forth below), and by adding names of additional persons. Sec. 756.04(2)(a), Stats. The jury commissioners must certify that the list has been prepared "in strict conformity with statutory requirements" and the list must include a "verified statement describing the manner in which the list was compiled or modified, including an enumeration of all public or private sources from which the names of the prospective jurors on the list were derived." Sec. 756.04(2)(a), Stats. The jury commissioners must write the name of each person on the list on separate cards which are placed in a master tumbler. Sec. 756.04(2)(c), Stats. It is from these cards in the tumbler that the jury which sits on a particular case is ultimately selected.[5] It is the procedure used in Milwaukee county in the compilation of the jury list which is being challenged in the case at bar.

Sec. 756.01(1), Stats., sets forth the qualifications of jurors as follows:

---

[5] The commissioners draw a sufficient number of names from the master tumbler to make up regular and reserve panels of jurors. Secs. 756.04(3), 756.05, Stats. It is these persons drawn for the panels who are summoned when a jury is needed, sec. 756.08, Stats., and their names are written on separate cards which are placed in a tumbler and then drawn as necessary to secure a jury. Sec. 756.096, Stats.

The state's brief describes the steps in the jury selection process as "levels" and summarizes the levels as follows: Level 1 is the establishment and maintenance of the jury list by the jury commissioners. Secs. 756.04(2)(a), 756.01(1), Stats. The challenge in the instant case is to the procedure used at this first level. Level 2 is the drawing of a jury panel from the list. Sec. 756.04(3), Stats. The clerk of court summons potential panel members to serve as petit jurors. Sec. 756.08, Stats. Level 3 is the drawing, pursuant to sec. 756.096, Stats., of a petit jury from the names of the panel members drawn and summoned under sec. 756.08, Stats. Level 4 is the selection of and swearing of the jury for a specific trial.

"**756.01 Qualifications of jurors.** (1) Persons who are U. S. citizens, who are electors of the state, who are possessed of their natural faculties, who are not infirm, who are able to read and understand the English language, and who have not been summoned to attend for prospective service as a petit juror for the time period applicable under s. 756.04(5m) within 2 years, shall be liable to be drawn as grand or petit jurors."

Exemptions, exclusions, disqualifications and excuses from jury service are dealt with in secs. 756.01(2) and 756.02, Stats. Sec. 756.01(2) provides as follows:

"Sec. 756.01(2). Subsection (1) [of 756.01 quoted above] shall not exempt, exclude or disqualify a person from jury service on the ground of infirmity because of a physical condition unless the judge finds that the person clearly cannot fulfill the responsibilities of a juror. The judge shall not consider the structural, physical or architectural limitations or barriers of a building, courtroom, jury box or other facility in making such a finding."

Sec. 756.02, entitled "Exemptions and excuses from jury service," states:

"(1) Judges and attorneys who claim an exemption pursuant to this section shall be exempt from jury service. No other qualified juror is exempt from jury service.

"(2) (a) Any person or group of persons may be excluded from the jury panel or excused from service as jurors by order of the judge based on a finding that jury service would entail undue hardship, extreme inconvenience or serious obstruction or delay in the fair and impartial administration of justice. The exclusion or excuse shall continue for a period deemed necessary by the judge, at the conclusion of which the person or group of persons shall reappear for jury service in accordance with the order of the judge.

"(b) A state legislator or full-time elected official shall be excused from service as a juror if the official states to the court that jury service would interfere with the performance of his or her official duties.

"(c) No citizen may be excluded from service as grand or petit juror in any court of this state on account of race or color or because of a physical condition, except as provided in s. 756.01(2)."

The procedure employed in Milwaukee county to select prospective jurors was described by the witnesses at the hearing in the circuit court and again by counsel for Milwaukee county at the oral argument.

In Milwaukee county, where the process is computer assisted, sec. 756.27, Stats., the poll list provides the names from which the jury list will be prepared. *State v. Bond*, 41 Wis.2d 219, 226, 163 N.W.2d 601 (1969). At regular intervals a Milwaukee county "Juror Qualification Questionnaire" is sent to those persons whose names are drawn from the computer-stored poll list.

The "Juror Qualification Questionnaire" is a simple, single page form. The first part of the questionnaire requests basic information relating to occupation; employer's name and address; age; spouse's name and occupation; spouse's employer's name and address; age of children; sex (F, M); woman's maiden name; marital status (married, single, divorced, widowed); and current mailing address. The second part of the questionnaire consists of the following six questions:

"1. Are you a citizen of the United States? — YES — NO
2. Are you at least 18 years of age? — YES — NO
3. Can you read and write the English language? — YES — NO
4. Have you been summoned for jury service in Milwaukee County in the past 2 years? — NO — YES Sworn on a jury? — YES — NO
5. Have you been convicted of a felony? — NO — YES; Civil rights restored? — YES — NO
6. Do you have any disabilities that would prevent you from serving as a juror? — NO — YES; Explain: ——————————————"

The returned questionnaires are divided among the jury commissioners each of whom has responsibility for a portion of the county. The jury commissioners review the responses from persons residing in their geographical area and compile a list of names of persons whom they find to be qualified.

As a result of this process, the jury commissioners excluded approximately twenty-five percent of those persons to whom questionnaires were sent in preparation of the jury list in issue in this case. To illustrate the kind and variety of the jury commissioners' decisions in excluding persons from the jury list, the parties placed in record twelve questionnaires from persons who were permanently excluded from the jury list by the jury commissioners. The defense counsel and the district attorney agreed that these twelve questionnaires were representative of the many questionnaires counsel examined. The jury commissioners excluded these twelve persons who answered "yes" to question 6 inquiring whether the individual had any disabilities which prevented him or her from serving as a juror on the basis of the following written explanations:

1. Not well (age 72).
2. I am going through allergy tests at the present time and they make me sleepy constantly (billing clerk, age 20).
3. I request you not ask me for jury duty (housewife and mother age 56).
4. I don't have the stamina to attend every day (age 67).
5. Recurring gout (employee of the City of Milwaukee, age 49).
6. Job requirements (occupation "electrical," age 27).
7. I do not have the proper education (clerk, age 55).
8. I do not want to serve on a jury (cashier, age 37).
9. I have arthritis and allergy problems and full time job (nursing assistant, age 59).
10. CVA—Aphasia (signed by granddaughter).

11. Cannot read, write or understand English.
12. My age (76). Not much self-confidence for such a job.

Jury Commissioner Roman Witkowiak and Chief Judge Manian testified at the motion hearing that aside from the statutes there were no written guidelines or standards which govern the jury commissioners' decision to exclude persons from the jury list in Milwaukee county. The jury commissioner testified that, although the commissioners occasionally sought counsel from the chief judge, they exercised their own discretion in excluding persons. Judge Manian had written the jury commissioners on January 11, 1980, as follows:

"Dear Mr. Witkowiak:
"This is to inform you that the procedure previously established by Judge Sullivan in his letter of September 1, 1978, is continued, to-wit the jury commission is authorized to excuse jurors patently unqualified as apparent from the said questionnaire.
"If there are any questions concerning this matter, please do not hesitate to contact me.
"Very truly yours,
"Victor Manian, Chief Judge."

Judge Sullivan's letter is not part of the record and was not described by the witnesses.

Judge Manian testified that he had not issued any guidelines for determination of juror qualification or disqualification; that he had only recently begun to be presented with packets of jury questionnaires; that the packets did not contain any findings of fact or memoranda discussing the jury commissioner's reasons for omitting certain names from the jury list; that he had not personally reviewed, investigated or examined the questionnaires to determine whether or not the persons excluded by the jury commissioners had set forth reasons justifying their exclusion from the jury list; that he was

relying on the determinations of juror disqualifications or exclusions made by the jury commissioners; and that it was not his practice to enter orders adopting the findings of the jury commissioners that certain persons be excluded from the jury list for any reason whether infirmity, undue hardship, or extreme inconvenience.

## III.

The state and the defense contend that the Milwaukee county procedure for selecting jurors impermissibly deviates from the statutory requirements in three respects: (A) contrary to sec. 756.04(2)(b), Stats., the Milwaukee juror qualification form does not elicit information specified under sec. 756.01, Stats.; (B) contrary to sec. 756.01 (2) and sec. 756.02(2)(c), Stats., a Milwaukee jury commissioner, not a judge, excludes those persons who claim they cannot fulfill the responsibilities of jurors on the ground of infirmity because of a physical condition; and (C) contrary to sec. 756.02(2)(a), Stats., a Milwaukee jury commissioner, not a judge, excludes those persons who do not wish to serve because of hardship, inconvenience or other reason. We shall examine each of these three contentions.

## (A)

Question 3 of the Milwaukee juror qualification form asks: "3. Can you read and *write* the English language?" (Emphasis added.) Sec. 756.01(1), Stats., provides that persons "who are able to read and *understand* the English language" are qualified to be drawn as jurors. (Emphasis added.) Sec. 756.04(2)(b), Stats., states that "the form shall elicit the information specified under sec. 756.01." The parties assert that asking whether a person is able to "write the English language" is not

equivalent to the statutory requirement that the person be able to "understand" the English language. Both the defense and the state generally agree that it may be possible for someone to be able to read and understand the English language yet not be able to write it and that the terms "read and understand" which the statute specifies and "read and write" as the questionnaire requires are not necessarily interchangeable.

As of 1977 the legislature no longer requires that a person be able to write the English language to qualify as a juror, although prior to 1977 the ability to write English was required by law. Sec. 2530, 1898 Rev. Stats., specifically required that jurors be persons "who are able to read and write the English language understandingly." This language remained unchanged until 1977 when it was amended to state that a juror must be "able to read and understand the English language." Sec. 12, ch. 318, Laws of 1977; sec. 255.01, renumbered sec. 756.01(1), Stats.[6] It would thus appear that in 1977 the legislature

---

[6] Sec. 2.11 of the American Bar Association Commission on Standards of Judicial Administration, Standards Relating to Trial Courts, states the qualification as "able to read and speak English" (1976) (see also Supporting Studies—3 Management of the Jury System, p. 3 (1975)); sec. 8(b)(2) of the Uniform Jury Selection and Service Act—1970, 13 Uniform Laws Annot. 525 (1980) disqualifies a person who "is unable to read, speak and understand the English language"; 3 American Bar Association, Standards for Criminal Justice, Trial by Jury, Standard 15–2.1(c) (2d ed. 1980) disqualified those unable to "read and speak English" rather than those unable to "read, write, speak, and understand the English language" as in the original standard; 28 U.S.C. sec. 1865(b)(2)(3) provides that a person is deemed qualified unless he "is unable to read, write, and understand the English language with a degree of proficiency sufficient to fill out satisfactorily the juror qualification form; [or] is unable to speak the English language."

deliberately deleted the requirement which had existed for nearly eighty years that a juror be able to write the English language.

We conclude that the wording of Question 3 of the Milwaukee County Juror Qualification Questionnaire does not "elicit the information specified under s. 756.01" as required by sec. 756.04(2)(b)1, Stats., and should be modified. Any person, otherwise qualified, who can read and understand but not write the English language is qualified to be placed on the jury list pursuant to sec. 756.01(1), Stats.

(B)

The state and the defense interpret sec. 756.01(2) and sec. 756.02(2)(c), Stats., as authorizing the judge, not the jury commissioners, to exempt, exclude or disqualify persons who are not able to fulfill their responsibilities as jurors on the ground of infirmity because of a physical condition. The court of appeals rejected this interpretation of chapter 756 and concluded that the jury commissioners can strike the names of these persons from the list of potential jurors, reasoning as follows: (1) Section 756.01(1), Stats., provides that only those who meet the statutorily prescribed qualifications are liable to be drawn as jurors. Under sec. 756.01(1), persons who are infirm would not qualify as jurors. (2) Sec. 756.04(2) (a), Stats., authorizes the jury commissioners to implement sec. 756.01(1), Stats., by providing that "[t]he commissioners shall revise the list by striking from it the names of persons found by them to be ineligible for jury service, as provided in s. 756.01." (3) Although sec. 756.04(2)(a), Stats., which directs the jury commissioners to determine sec. 756.01(1) qualifications, appears to conflict with sec. 756.01(2), which authorizes a

judge, not the jury commissioner, to exclude, exempt or disqualify potential jurors who cannot fulfill their responsibilities on the ground of infirmity because of a physical condition, these two statutory provisions are *in pari materia* and should, if possible, be construed to be in harmony. (4) The legislative history of sec. 756.01 (2), Stats., indicates that the legislature did not intend to limit the authority of the jury commissioners. The purpose of sec. 756.01(2) was "not to make a judge primarily responsible for the examination of potential jurors' qualifications but merely to prevent discrimination against the handicapped or disabled." 95 Wis.2d at 724. Therefore the jury commissioners have full authority to strike from the list of potential jurors those who are infirm and thereby ineligible under sec. 756.01(1). (5) Construing the statutes to allow jury commissioners, not judges, to have initial responsibility for screening potential jurors under sec. 756.01(1), Stats., including exempting, excusing or disqualifying those who are infirm, is buttressed by a common sense view of the jury selection system. "It would indeed be absurd to require the chief judge to exercise his personal discretion . . . . Individualized screening of all potential jurors based upon the juror qualification forms is a cumbersome and time-consuming task." 95 Wis.2d at 725.

We are not persuaded by the reasoning of the court of appeals. The court of appeals construes sec. 756.01(2), Stats., in direct contravention with the statutory language. Sec. 756.01(2) expressly places the responsibility for exempting, excluding or disqualifying a person on the ground of infirmity because of a physical condition on the judge, not the jury commissioners. Both sentences of sec. 756.01(2), Stats., previously quoted at page 187, make the allocation of responsibility explicit by referring not to the jury commissioners but to the judge. Sec. 756.02(2)(c), Stats., confirms that the legislative intent was to

grant a limited power to exclude a person because of a physical condition and to name the judge as the holder of the power. Sec. 756.02(2)(c), Stats., states *"No citizen may be excluded from service as grand or petit juror in any court of this state on account of race or color or because of a physical condition, except as provided in s. 756.01(2)."* (Emphasis added.) *See* sec. 24, ch. 275, Laws of 1975.

We can detect no ambiguity in the statutory language which requires that a judge decide whether a physical condition is a ground for exclusion, exemption or disqualification from jury service. Secs. 756.01(2) and 756.02(2)(a), Stats., we conclude, are unambiguous. Nevertheless, the court of appeals saw an ambiguity because of the perceived conflict between sec. 756.01(2) and sec. 756.04(2)(a), Stats. The court of appeals decided that these sections are *in pari materia* and resorted to the legislative history of sec. 756.01(2) to resolve the problem created by the perceived conflict. We do not see a conflict. The specific and more recently adopted language of sec. 756.01(2) and sec. 756.02(2)(c) limits the power of jury commissioners under sec. 756.04(2)(a) to exclude a person who is infirm and vests the power in the judge.

We agree with the court of appeals that the legislative history shows that the purpose of the 1975 amendment of sec. 756.01(2), Stats., was to protect the physically handicapped from discrimination and not to protect litigants.[7]

---

[7] As the court of appeals pointed out, the 1975 amendment was suggested in The Final Report (July 19, 1974) of the Governor's Task Force on Problems of People With Physical Handicaps, which states as follows:

"Witnesses at the public hearings identified specific language in the statutes and administrative rules which clearly discriminated against people with physical disabilities or which included terms they found offensive. The most flagrant example, Section 255.10 of the Wisconsin Statutes, prohibits the 'infirm' from serv-

However, we conclude that there is no conflict between the statutory purpose of preventing discrimination against persons with a physical disability and the legislative decision, clearly stated in the statute, to designate the judge as the person who must decide whether to exclude, exempt or disqualify a person from jury service because of a physical condition. Our review of the legislative history confirms our interpretation of secs. 756.01 and 756.04(2)(a), Stats. We shall set forth the legislative history, not to support our reading of unambiguous statutes, but to give the position of the court of appeals full consideration.

The history of chapter 756, Stats., demonstrates the development of a legislative policy favoring the reduction of statutory exemptions, exclusions and disqualifications so that the jury would be selected from a broad cross-section of the citizenry, favoring a reduction of the jury commissioners' power to make subjective determinations of eligibility for jury service, and favoring the granting of discretion to the judge to exclude or excuse persons from jury service. A review of the history of chapter 756 illustrates the legislative journey.

The 1849 statutes made all United States citizens who were qualified electors eligible for jury service and exempted a long list of persons, including "[p]ersons sub-

---

ing on juries. To remedy this clear denial of individual rights, THE TASK FORCE RECOMMENDS:

"To the Legislature:

"1. *Amendment of the statute to prohibit exception, exclusion, or disqualification of jurors with physical disabilities unless the judge finds that the individual clearly cannot fulfill the responsibilities of a juror. The judge's decisions should consider only individual limitations in relation to the case. That determination must not include socially imposed limitations such as the structural or architectural barriers of a building, courtroom, jury box or other facility."* (Emphasis in original.)

For a discussion of deaf persons and jury service *see* Note, *Jury Selection: The Courts, The Constitution and The Deaf,* 11 Pacif. L.J. 967 (1980).

ject to any bodily infirmity amounting to any disability."[8] The board of county supervisors prepared the jury list and the supervisors were directed to "select such persons only as they know, or have good reason to believe, are possessed of qualifications by law required of persons to serve as jurors, and are of approved integrity, fair character, sound judgment and well informed."[9] *See* secs. 2524, 2530, 2533b, Stats. 1898. The position of jury commissioner came into existence in 1889, chapter 493, Laws of 1889, for certain counties, and the jury commissioner was empowered to select qualified jurors.

In 1913 the qualifications for jurors were set forth as follows:

"All citizens of the United States who are qualified electors of this state *who are possessed of their natural faculties, who are not infirm or decrepit,* who are esteemed in their communities as *men of good character, approved integrity and sound judgment,* and who are able to read and write the English language understandingly,

---

[8] "Sec. 2. The following persons shall be exempt from serving as jurors: the governor, lieutenant governor, secretary and treasurer of the state, all judges of courts of record, acting commissioners of the board of public works, register and treasurer of the state land office, superintendent of public instruction, clerks of courts, registers of deeds, sheriffs and their deputies, coroners, constables, all officers of the United States, attorneys and counsellors at law, and solicitors and counsellors in chancery, officers of the university, officers of colleges, ministers of the gospel, preceptors and teachers of incorporated academies, one teacher in each common school, practicing physicians and surgeons, one miller to each grist mill, one ferryman to each licensed ferry, all superintendents, engineers and collectors of any canal or railroad authorized by the laws of this state, any portion of which shall be actually constructed and used, all members of companies of firemen organized according to law, all persons more than sixty years of age, and all persons not of sound mind or discretion, and *persons subject to any bodily infirmity amounting to any disability;* and all persons shall be disqualified from serving as jurors who have been convicted of any infamous crime." Sec. 2, ch. 97, Rev. Stats. 1849. (Emphasis added.)

[9] Sec. 6, Ch. 97, Rev. Stats. 1849.

shall be liable to be drawn as jurors, except as otherwise provided in the statutes." (Emphasis supplied.) Sec. 2, ch. 441, Laws of 1913; sec. 2524, Stats. 1913.

The legislature continued to exempt many occupational categories. Sec. 2525, Stats. 1913. The jury commissioners were to provide the list of names to serve as jurors "of such persons as they believe to be possessed of the qualifications prescribed by section 2524 [quoted above]." Sec. 4, ch. 441, Laws of 1913; sec. 2533b, Stats. 1913.

In 1949 (sec. 255.01, Stats. 1949), the phrase "not infirm or decrepit" in the list of qualifications was replaced by the phrase "not infirm," and the phrase "men of good character, approved integrity and sound judgment" was amended to read "of good character and sound judgment." *See* ch. 488, Laws of 1949. Sec. 255.02, Stats. 1949, set forth the numerous exempt categories of persons. The legislature further expressly provided that the *jury commissioners* were prohibited from inserting the name of any person on the list of jurors "who is exempted or disqualified under section 255.02, nor unless such person is determined to have the qualifications specified in section 255.01 upon the knowledge of the commissioners or upon the receipt by them of reliable information indicating that the person is so qualified." Sec. 255.04(2)(a), Stats. 1949. The legislature also authorized jury commissioners to investigate reputation, character and fitness for jury service. Sec. 255.03(4), Stats. 1949. The 1949 law appears to mark the zenith of the jury commissioners' statutory power and duty to exclude, disqualify, exempt or excuse potential jurors on the basis of the qualifications and exclusions set forth in secs. 255.01 and 255.02 and on the basis of both objective and subjective criteria. *See* 39 Op. A.G. (Wis.) 606 (1950); Note, *Constitutional Law—Restriction of Jury Service to College Graduates* 1950 Wis. L. Rev. 690.

In 1953, the legislature exempted from jury service "any person over 65 *upon his request to the court or judge, or upon the judge's own motion.*" Sec. 3, ch. 280, Laws of 1953; sec. 255.02(7), Stats. 1953. The jury commissioners were authorized to strike from the list of jurors "the names of persons found by them to be ineligible for jury service." Sec. 7, ch. 280, Laws of 1953; sec. 255.04(2)(a), Stats. 1953. The term "ineligible" was not defined; the direction to the jury commissioners to exclude those disqualified or exempt under secs. 255.01 and 255.02, Stats., was apparently deleted because in 1953 the legislature had given the judge not the jury commissioner power in sec. 255.02(7) to exclude persons over 65.

In 1969 (chapter 305, Laws of 1969), the legislature amended sec. 255.02 and eliminated the long list of persons automatically exempt from jury service. The legislature substituted a list of three "exempt" groups: those automatically exempt (*e.g.,* officers, attorneys, doctors, ministers and students); those exempt at their request or on the judge's own motion (*e.g.,* teachers, druggists, embalmers, employees at state and county institutions); and those whom the judge may excuse or exclude from jury service for good cause (*e.g.,* undue hardship, extreme inconvenience or serious obstruction or delay in the fair and impartial administration of justice). Sec. 255.02, Stats. 1969. In the 1969 law the legislature shortened the list of persons entitled to automatic exemptions and increased the power of the judge to exclude persons. Sec. 255.04(2)(a), Stats. 1969, remained unchanged in authorizing the jury commissioners to strike from the jury list "the names of persons found by them to be ineligible for jury service." In *Brown v. State,* 58 Wis.2d 158, 171, 205 N.W.2d 566 (1973), this court held that the jury commissioners had no authority to exclude systematically all teachers; individual teachers

could be excluded on their request and teachers as a class could be excluded by a "court-ordered exemption under sec. 255.02(3)(b), Stats. [1973]."

In 1975 the legislature enacted sec. 756.01(2), Stats., and sec. 756.02(2)(c), Stats., quoted previously at pages 187 and 188, authorizing judges, not jury commissioners, to exclude those unable to fulfill their responsibilities on the ground of infirmity because of a physical condition. The court of appeals correctly described the qualifications set forth in sec. 756.01(1), Stats., as basic requirements. They are, to the maximum extent possible, objective, rather than subjective, criteria. The qualifications "possessed of their natural faculties" and "not infirm" are health-related and allow broader discretion in their application than do the other qualifications set forth in sec. 756.01(1), Stats. Sec. 756.01(2) authorizing judges, not jury commissioners, to make certain health-related determinations is in harmony with the 1953 and 1969 revisions which placed discretion in the judge, not the jury commissioners, to exclude from jury duty those whom the legislature did not wish to exclude automatically.

Thus in 1953, 1969 and 1975, the legislature enacted specific provisions requiring the judge, not the jury commissioners, to rule on certain qualifications, exclusions, exemptions or excuses from jury service. Both the language and the legislative history of ch. 756, Stats., reveal the legislative intent to divide responsibilities in the selection of qualified persons for the jury list between the jury commissioners on the one hand and the judge on the other. With the aid of this legislative history we conclude that had the legislature intended the jury commissioners, not the judge, to determine whether a person is unable to fulfill the responsibilities of a juror on the ground of infirmity because of a physical condition, it would have said so. Instead the legislature

speaks of the judge making the finding whether a person can fulfill the responsibilities of a juror under sec. 756.01(2), Stats. The 1975 amendments, as we read them, are consistent with the policies spawned in 1953 increasing the powers and duties of the judge in excluding and excusing persons from jury service and with the growing concern about discrimination against persons with physical disability.

In 1977 the legislature again significantly revised chapter 255 of the statutes entitled "Jurors." The requirement that potential jurors be persons "who are esteemed in their communities as of good character and sound judgment" was deleted as a qualification, as was the jury commissioner's investigatory authority to inquire as to reputation and character. Secs. 12, 14, ch. 318, Laws of 1977. Sec. 255.02, Stats., (renumbered sec. 756.02, Stats.) was amended in 1977 to eliminate the various categories of exempt and excluded persons and to provide that "[j]udges and attorneys who claim an exemption pursuant to this section shall be exempt from jury service [and] [n]o other qualified juror is exempt from jury service." Sec. 13, ch. 318, Laws of 1977. The technique of determining juror qualification by questionnaire was established, sec. 18, ch. 318, Laws of 1977, and the statutes continued to provide that the list compiled by the jury commissioners "be certified by the commissioners as having been prepared in strict conformity with the statutory requirements." The 1977 law added the requirement that "[t]he list shall also include a verified statement describing the manner in which the list was compiled or modified, including an enumeration of all public or private sources from which the names of the prospective jurors on the list were derived." Sec. 16, ch. 318, Laws of 1977; sec. 756.04(2)(a), Stats.

With these 1977 amendments, the legislature abandoned the lengthy list of categories of persons automatically exempt, excluded or excused from jury service and, to a large extent, withdrew the jury commissioner's power to exclude an individual on the basis of the jury commissioner's subjective determination of qualification. The present chapter 756, Stats., enables many persons to qualify for jury service, grants few exemptions, and authorizes the judge to exempt, exclude, excuse or disqualify individuals for statutorily prescribed reasons. It is clear that the legislature now views jury service not as a task easily avoided but as a civic duty which each person possessing the qualifications established by law must perform and that secs. 756.01(2) and 756.02(2)(c), are designed to extend both the opportunity to be a juror and the duty of jury service to the physically disabled. Sec. 756.01(2), Stats. The 1977 enactments confirm our interpretation that the 1975 amendments to secs. 756.01(2) and 756.02(2)(c) impose responsibility on the judge.

Wisconsin legislative policy placing increasing tasks on the judge, not the jury commissioners, to exclude, exempt, disqualify and excuse persons from jury service, is consistent with the standards and policies set forth in sec. 2.62 of the *Standards Relating to Trial Courts* promulgated by the American Bar Association Commission on Standards of Judicial Administration (1976),[10]

[10] Sec. 2.62 of the Standards Relating to Trial Courts states: "2.62 **Excuses from Jury Service.** A person should be excused from jury service only for permanent disability affecting his capacity to serve, vulnerability to embarrassment in voir dire examination, or prior jury service within the previous year. Temporary deferral of service should be permitted in cases of public necessity, undue hardship, temporary disability, or extreme inconvenience. Requests for excuse from service should be determined under the direct supervision of a judge." The Commentary states: "Where the court has specific guidelines governing ex-

in Standard 15–2.1 of the *Standards Relating to Trial by Jury* in 3 American Bar Association Standards for Criminal Justice (2d ed. 1980), in sec. 8 of the Uniform Jury Selection and Service Act—1970 promulgated by the National Conference of Commissioners on Uniform State Laws,[11] and in sec. 1865 of the Federal Jury System Improvements Act of 1978.[12]

cuses, administration of the guidelines may be delegated to court staff. Requests for excuse that require the exercise of discretion, however, should be determined by a judge."

The American Bar Association Commission on Standards of Judicial Administration—Supporting Studies—3, Management of the Jury System, p. 20 (1975) discusses excuses from jury service as follows:

"Because of the element of discretion necessarily involved in applying these regulations it is important that they be applied according to established rules by a single deciding authority. Though there is some opinion that all requests for excuse should be decided by a judge, we advocate delegating this function to the manager of the jury system. If adequate rules have been promulgated governing excuses, if the court stands behind these rules and does not tolerate routine appeals from the ruling of the administrator, and if the system is periodically reviewed by the judges, there should be no need to devote judicial time to excusing jurors. In very large metropolitan courts it is an absolute necessity for excuses to be handled by an administrator. In the federal system, the applicable statute has been interpreted by some districts to require a judge to rule personally on each request for excuse, but in many federal District Courts the actual determination is delegated to the clerk of court or a member of his staff, subject to review by a judge."

[11] Section 8 states:

"(a) The court, upon request of the jury commission or a prospective juror or on its own initiative, shall determine on the basis of information provided on the juror qualification form or interview with the prospective juror or other competent evidence whether the prospective juror is disqualified for jury service. The clerk shall enter this determination in the space provided on the juror qualification form and on the alphabetical list of names drawn from the master jury wheel.

Sec. 756.01(2), Stats., whether read alone or read against the background of the legislative history of chap-

"(b) A prospective juror is disqualified to serve on a jury if he:

"(1) is not a citizen of the United States, [21] years old, and a resident of the [district] [county];

"(2) is unable to read, speak, and understand the English language;

"(3) is incapable, by reason of his physical or mental disability, of rendering satisfactory jury service; but a person claiming this disqualification may be required to submit a physician's certificate as to the disability, and the certifying physician is subject to inquiry by the court at its discretion; or

"(4) has lost the right to vote because of a criminal conviction."

*See also* sec. 11 of the Uniform Law. The Uniform Law appears in 13 Unif. Laws Annot. 509 (1980). *See also* McKusick & Boxer, *Uniform Jury Selection and Service Act*, 8 Harv. J. on Legislation, 280 (1971).

[12] 28 U.S.C. sec. 1865 entitled "Qualification for Jury Service" states:

"(a) The chief judge of the district court, or such other district court judge as the plan may provide, on his initiative or upon recommendation of the clerk or jury commission, shall determine solely on the basis of information provided on the juror qualification form and other competent evidence whether a person is unqualified for, or exempt, or to be excused from jury service. The clerk shall enter such determination in the space provided on the juror qualification form and the alphabetical list of names drawn from the master jury wheel. If a person did not appear in response to a summons, such fact shall be noted on said list.

"(b) In making such determination the chief judge of the district court, or such other district court judge as the plan may provide, shall deem any person qualified to serve on grand and petit juries in the district court unless he—

"(1) is not a citizen of the United States eighteen years old who has resided for a period of one year within the judicial district;

"(2) is unable to read, write, and understand the English language with a degree of proficiency sufficient to fill out satisfactorily the juror qualification form;

"(3) is unable to speak the English language;

ter 756, yields the conclusion that a judge, not a jury commissioner, has the power to exempt, exclude or disqualify a prospective juror from service on the ground set forth in sec. 756.01(2), Stats. A jury commissioner's power to exempt, exclude or disqualify an individual from the jury list is limited to the other grounds enumerated in sec. 756.01(1), Stats. Thus the Milwaukee county jury commissioners exceeded their powers when they excluded a prospective juror from the jury list for inability to fulfill the responsibilities of a juror on the grounds of infirmity because of a physical condition.

(C)

The state, the defense and the court of appeals concluded that the jury commissioners exceeded their powers when they excluded a prospective juror from the jury list for any reason other than that the potential juror did not meet the requirements set forth in sec. 756.01(1), Stats. We concur in this decision. The jury commissioners erred in excluding prospective jurors who asserted hardship, job requirements, inconvenience, lack of interest, or unwillingness to serve. These assertions raise matters beyond the statutorily defined qualifica-

---

"(4) is incapable, by reason of mental or physical infirmity, to render satisfactory jury service; or

"(5) has a charge pending against him for the commission of, or has been convicted in a State or Federal court of record of, a crime punishable by imprisonment for more than one year and his civil rights have not been restored."

See also Report to the Judicial Conference of Senior Circuit Judges of the Committee on Selection of Jurors (1942), quoted in Vanderbilt, Minimum Standards of Judicial Administration 151–2 (1949); Report of the Judicial Conference Committee on the Operation of the Jury System in the Federal Courts, 26 F.R.D. 409 (1960).

tions stated in sec. 756.01(1), Stats. The power to exclude or excuse a person or group of persons on the ground of undue hardship or extreme inconvenience or serious obstruction or delay in the fair and impartial administration of justice is vested in the judge, sec. 756.02(2), Stats., and cannot be exercised by a jury commissioner. Although the Wisconsin statutes do not expressly state at which step or steps in the jury selection procedure the judge exercises his power under sec. 756.02(2), Stats., to exclude or excuse,[13] it is clear that the judge may exercise this power throughout the jury selection procedure, including the time at which the jury list is prepared.

## (D)

Whatever merit there may be to the existing Milwaukee county jury selection procedure which relieves judges of the task of excluding certain persons from jury service, the procedure does not conform to the statutes and must be discontinued. *Cf. State ex rel. Morrow v. Lewis,* 55 Wis.2d 502, 506, 200 N.W.2d 193 (1972). We conclude that the Milwaukee county jury selection procedure must be changed forthwith to be in strict conformity with statutory requirements. Sec. 756.-04(2)(a), Stats.

Accordingly, this court, in the exercise of its superintending and administrative authority pursuant to sec.

---

[13] The statutes use several terms, apparently interchangeably, *i.e.,* "exempt, exclude or disqualify a person from jury service"; "excluded from the jury panel"; "excused from service as jurors"; "excluded from service as grand or petit juror," without any statement as to when the exemption, exclusion, disqualification or excusing occurs.

3, art. VII, Wis. Const.,[14] directs the chief judge of the First Judicial District, as administrative chief of that district,[15] to supervise jury commissioners in revising the Juror Qualification Questionnaire to comply with chapter 756, Stats., and to set forth a procedure by which the chief judge (or one or more circuit judges as the chief judge directs) makes a finding upon his or her initiative or upon recommendation of the jury commissioners, on the basis of information provided on the juror qualification form and other reliable information provided by the jury commissioners, of whether the person otherwise qualified for jury service pursuant to sec. 756.01(1) may be excluded, exempted, excused or disqualified, permanently or temporarily, from the jury list, pursuant to secs. 756.01(2) and 756.02(2), Stats.

The chief judge should promulgate specific guidelines for exempting, excluding, or disqualifying persons who cannot fulfill the responsibilities of a juror on the ground of infirmity because of a physical condition and for excluding or excusing a person or group of persons from jury service on the basis of undue hardship, extreme inconvenience or serious obstruction or delay in the fair and impartial administration of justice. These guidelines shall be used by the jury commissioners when they make recommendations to the judge and by the judge in making the required finding under secs. 756.-01(2) and 756.02, Stats.

Because the questionnaire contains "a declaration that the responses are true to the best of the person's knowl-

---

[14] Sec. 3, Art. VII, Wis. Const. provides:

"(1) The supreme court shall have superintending and administrative authority over all courts."

[15] Secs. 757.61–757.64, Stats.; SCR 70.18–70.19. "The juror selection system is an integral part of overall court and caseflow management . . . ." American Bar Association Commission on Standards of Judicial Administration—Supporting Studies—3, Management of the Jury System, p. 10 (1975).

edge and an acknowledgment that upon a wilful misrepresentation of a material fact . . . the person may forfeit not more than $500," sec. 756.04(2)(b)1, Stats., the guidelines may provide that the jury commissioners may base their recommendation and the judge may base the required finding on the response to the questionnaire. The person's self-evaluation of his or her qualifications under sec. 756.01(1), including his or her evaluation of inability to fulfill the responsibilities of a juror on the ground of infirmity because of a physical condition, sec. 756.01(2), may be accepted by the jury commissioners and the judge at this stage of the jury selection process of compiling the jury list.

Notwithstanding our conclusion that the procedure used in compiling the jury list is in violation of the statutes, we direct in the interest of efficient administration of justice that the existing jury list and the existing panels be used until a new jury list and new panels are established in strict conformity with the statutes.

## IV.

The question remaining is whether Milwaukee county's transgressions require reversal of the orders and therefore reversal of the defendant's conviction.

Neither the defendant nor the state contends in this court that any segment of the population was systematically and illegally excluded from jury service[16] or that federal or state constitutional rights have, in any way, been violated. *State v. Holmstrom*, 43 Wis.2d 465, 471-72, 168 N.W.2d 574 (1969) ; *Brown v. State*, 58 Wis.2d 158, 165, 205 N.W.2d 566 (1973) ; *Wilson v.*

---

[16] Only persons who did not want to serve as jurors were excluded by the commissioners. No one argues that either the infirm or those not wanting to serve a jurors were a distinctive group which was systematically excluded.

*State*, 59 Wis.2d 269, 208 N.W.2d 134 (1973) ; *State v. Pruitt*, 95 Wis.2d 69, 289 N.W.2d 343 (Ct. App. 1980) ; *Duren v. Missouri*, 439 U.S. 357 (1979).

The state and defendant agree that their statutory rights under chapter 756 have been violated. They disagree whether the conviction should be reversed as a result of the statutory violations.

The legislature has addressed the issue of when a verdict or judgment shall be set aside or a new trial granted on an objection to certain stages of the jury selection process. Sec. 270.52, Stats. 1973, provided as follows:

"270.52 **Irregularities in venires, etc., immaterial**
"No irregularity in any writ of venire facias or in the drawing, summoning, returning or impaneling of petit jurors shall be sufficient to set aside a verdict unless the party making the objection was injured by the irregularity or unless the objection was made before the returning of the verdict."[17]

This section was repealed effective January 1, 1976, and sec. 805.18(2), Stats., was adopted which, according to the Judicial Council Committee's Note, 1974, is substantially equivalent to sec. 270.52, Stats. 67 Wis.2d 714, 760. Sec. 805.18, Stats., provides:

"805.18 **Mistakes and omissions; harmless error.** (1) The court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party.
"(2) No judgment shall be reversed or set aside or new trial granted in any action or proceeding on the ground of drawing, selection or misdirection of jury, or the improper admission of evidence, or for error as to any matter of pleading or procedure, unless in the

---

[17] This court considered sec. 270.52, Stats., applicable to the timing of an objection to impaneling a jury, but not to the timing of a challenge to a general jury array. *Brown v. State*, 58 Wis.2d 158, 171, 205 N.W.2d 158 (1973).

opinion of the court to which the application is made, after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure a new trial."

Attorney Graczyk, in her article entitled *The New Wisconsin Rules of Civil Procedure, Chapters 805–807*, 59 Marq. L. Rev. 671, 715 (1976), comments that subsection (1) of sec. 805.18, Stats., sets out the harmless error doctrine to be applied by the trial court and subsection (2), which replaces former sec. 270.52, Stats., as to irregularities in the impaneling of the jury, sets out the harmless error doctrine to be applied by the appellate court.[18] We view the test of whether error affects the substantial rights of the party to be essentially the same whether applied by the trial or appellate courts. The legislature obviously did not intend that all deviations from the statutory jury selection procedure would justify setting aside a verdict. The legislature intended the doctrine of harmless error to apply to jury

---

[18] We note that sec. 805.18, Stats., is in chapter 805 which relates to civil actions generally and trials specifically; that sec. 972.11, Stats., provides that the rules of evidence and practice in civil actions shall be applicable in all criminal proceedings unless the context of a section or rule manifestly requires a different context; and that sec. 972.01, Stats., provides that "The summoning of jurors, the impaneling and qualifications of jurors . . . shall be the same in criminal as in civil actions . . . ." Although sec. 817.37, Stats. 1975, relating to appellate review and harmless error was repealed by chapter 187, Laws of 1977, the doctrine of harmless error continues to exist in appellate review and apparently sec. 817.37, Stats. 1975, was deleted because it duplicates sec. 805.18, Stats. The *Interpretive Commentary* to sec. 817.37, printed in West's Wis. Stats. Annot. sec. 817.37, p. 373 (1977), comments on the similarity of secs. 817.37 and 805.18, Stats., and states that sec. 817.37 should be considered in connection with sec. 805.18, Stats.

selection. *Cf. United States v. Davis,* 546 F.2d 583 (5th Cir. 1977) ; *United States v. Evans,* 526 F.2d 701 (5th Cir. 1976), *cert. denied* 429 U.S. 818 (1976) ; *United States v. Armsbury,* 408 F. Supp. 1130 (D. Or. 1976).

This court, in assessing jury challenges in prior cases, has stated that irregularities in the process are immaterial unless it appears probable that there has been prejudice. "The rule in this state is that irregularities in the selection of jurymen are to be disregarded unless it appears probable that the person seeking to take advantage thereof has been prejudiced thereby. *Ullman v. State* (1905), 124 Wis. 602, 609, 103 N.W. 6." *Petition of Salen,* 231 Wis. 489, 491, 286 N.W. 5 (1939). *Accord Pamanet v. State,* 49 Wis.2d 501, 509, 182 N.W. 2d 459 (1971). In other cases this court has indicated that it will review a challenge to the selection of the "jury array" that is to the preparation of the jury list to determine if there was a violation "in any material respect" or whether there was "substantial compliance" with the jury selection statute. *State v. Nutley,* 24 Wis. 2d 527, 540, 129 N.W.2d 155 (1964), *cert. denied* 380 U.S. 918 (1965) ; *State v. Bond,* 41 Wis.2d 219, 227, 163 N.W.2d 601 (1969).

In *Nutley* we "stress[ed] the importance of the proper selection of the jury array" and said that "[s]ubstantial compliance . . . [with the jury selection statutes] will insure that jurors will be selected only after careful deliberation as to their qualifications, and only after every effort has been made to pick a truly representative group." *State v. Nutley,* 24 Wis.2d 527, 540, 129 N.W.2d 155 (1964), *cert. denied* 380 U.S. 918 (1965). Conversely, if there has not been substantial compliance with the jury selection statutes as to the preparation of the jury list, the parties are not insured that every ef-

fort has been made to select a jury after careful deliberation as to their qualifications and to pick a truly representative jury, and the parties' right to a trial by a jury selected at random from a broad cross-section of the community has been prejudiced. *Petition of Salen, supra,* 231 Wis. at 491. In other words an irregularity in the preparation of the jury list "has affected the substantial rights of the party seeking to reverse or set aside the judgment," sec. 805.18(2), Stats., if the procedure used fails to insure, as does the statutory procedure, that a jury composed of persons qualified under the statutes is selected at random from a broad cross-section of the community. *Cf. United States v. Evans,* 526 F.2d 701, 705 (5th Cir. 1976); *United States v. Kennedy,* 548 F.2d 608, 612 (5th Cir. 1977); H. R. Rep. No. 1076, 90 Cong., 2d Sess., reprinted in 1968 U. S. Code Cong. and Admin. News, pp. 1792, 1805.

Where a party has properly and timely objected to the procedure for preparing a jury list, the test for determining whether the jury selection procedure substantially complies with the statutes is to measure the procedure used against the jury selection statute and against the objectives of the statute and the objectives of the statutory provisions which have been violated. *Cf. United States v. Davis,* 546 F.2d 583, 589 (5th Cir. 1977); *United States v. Smith,* 588 F.2d 111, 115 (5th Cir. 1979); *United States v. Maskeny,* 609 F.2d 183, 191 (5th Cir. 1980). The legislative objectives in chapter 756, and especially in secs. 756.01 and 756.02, are that all qualified citizens have the opportunity and the obligation to serve as jurors. The selection and use of a jury is part of our concept of a democratic society and representative government and the legislative policy and purpose reflected in chapter 756 is that juries be selected from a broad cross-section of the community and that

there be no discriminatory practices in the selection. *State v. Bond,* 41 Wis.2d 219, 227, 163 N.W.2d 601 (1968). To this end the statutes provide for random selection of jurors, *cf.* sec. 756.096(2)(b), Stats., and that juror qualifications are based largely on objective, rather than subjective, criteria. *Thiel v. So. Pac. Co.,* 328 U.S. 217, 220 (1946); *United States v. Davis,* 546 F.2d 583, 589 (5th Cir. 1977); *United States v. Zirpolo,* 450 F.2d 424, 428 (3d Cir. 1971); *Rabinowitz v. United States,* 366 F.2d 34, 45 (5th Cir. 1966).

We must therefore determine whether the Milwaukee county jury selection procedure frustrated the legislative goals of obtaining jurors on the basis of objective qualifications set forth in the statutes, selected at random, and from a broad cross-section of the community. If the goals were frustrated, the stay should have been granted and the conviction must be reversed; if the goals were not frustrated, the defendant's objection was properly overruled.

When we look at the operation of the aspect of the Milwaukee county jury selection procedure in issue in this case and the effect of the statutory violations, we conclude that the procedure does not conform strictly to the statutory requirements, as the legislature has mandated, but that the procedure does not frustrate the legislative goals. In the instant case, the persons excluded from the jury list were excluded at their own request and not by the jury commissioners against the wishes of the people involved. Those who were excluded were excluded on the basis of their responses to the questionnaire, and several questionnaires evidence meritorious statutory grounds justifying the person's exclusion. We recognize that some persons were excluded from the jury list by the jury commissioners on improper grounds such as the person's own unwillingness to serve as a juror. An individual's personal predilection

not to serve as a juror, standing alone, is not contemplated by the statutes as a basis for exclusion, exemption, excuse or disqualification, and preparing a jury list using the criterion of personal predilection may affect the random or objective nature of the selection process. *Cf. United States v. Kennedy*, 548 F.2d 608, 612 (5th Cir. 1977). In all probability therefore people were erroneously excluded from the jury list by the jury commissioners. However, on the basis of the record before us, we are not persuaded that in this case the inherent random nature of the jury selection process or the representative character of the jury was significantly affected by the procedure used. The jury panel was still selected at random from a large number of names. There was no claim or evidence that the jury commissioners applied their own subjective criteria to exclude persons from the jury list. The jury commissioners obviously intended to determine juror qualifications on the basis of the statutory criteria, apparently (albeit mistakenly) viewing their job as encompassing the power to excuse persons because of hardship, inconvenience and obstruction or delay in the fair and impartial administration of justice and apparently (albeit mistakenly) concluding that persons who expressly stated on the questionnaire that they did not wish to serve could be excused under these statutory grounds. No segment of the population was systematically or illegally excluded from jury service.[19] Indeed the record suggests that

[19] 28 U.S.C. sec. 1867(a) provides that the defendant may move to stay the proceedings "on the ground of substantial failure to comply with the provision of [the Jury Selection and Service Act of 1968] in selecting the grand or petit jury."

For federal cases holding that there was no substantial failure to comply with the federal statutes, *see, e.g., United States v. Smith*, 589 F.2d 111, 115 (5th Cir. 1979); *United States v. Davis*, 546 F.2d 583 (5th Cir. 1977); *United States v. Evans*, 526 F.2d 701, 706 (5th Cir 1977), *cert. denied* 429 U.S. 818 (1976); *United States v. Ross*, 468 F.2d 1213 (9th Cir. 1972); *United States v.*

the jury commissioners were diligent and acted with no purpose or intent other than a devotion to their duties as they perceived them. We do not view the fact that the jury commissioners, rather than the judge, excluded, disqualified or excused persons from the jury list as a deviation necessitating reversal. Federal courts considering the question of administrative personnel exercising the power of the judge in excusing jurors have reached the same conclusion. *See, e.g., United States v. Evans,* 526 F.2d 701, 706 (5th Cir. 1976) ; *United States v. Maskeny,* 609 F.2d 183, 193 (5th Cir. 1980).

Although we conclude that the jury selection procedure employed by Milwaukee county does not conform to the statutes and although we direct the jury selection procedure be modified forthwith to bring it into strict conformity with the statutes, we conclude that the procedure used was in substantial compliance with chapter 756, Stats., that the purpose of chapter 756, Stats., has not been frustrated, and that a reversal of the orders of the circuit court is not required.

*By the Court.*—The decision of the court of appeals is affirmed.

*Huber,* 457 F. Supp. 1221, 1231 (S.D.N.Y. 1978); *United States v. Tarnowski,* 429 F. Supp. 783 (E.D. Mich. 1977).

For federal cases holding that there was substantial failure to comply with the federal statutes, *see, e.g., United States v. Oki-yama,* 521 F.2d 601 (9th Cir. 1975) (indictment dismissed; deficiencies in process of selecting jurors create serious risks that jurors selected not proficient in English and did not represent a fair cross-section of community); *United States v. Zirpolo,* 450 F.2d 424 (3d Cir. 1971) (judgment of conviction reversed; clerk of court favored males over females creating a 2 to 1 ratio); *Rabinowitz v. United States,* 366 F.2d 34 (5th Cir. 1966) (conviction reversed; clerk and jury commissioner used own standards of character, intelligence and ability); *United States v. Hill,* 480 F. Supp. 1223 (S.D. Fla. 1979) (indictment dismissed; clerk of court without consultation or approval of the judge excluded 31 of 77 names that were randomly selected to serve on grand jury).

COFFEY, J. *(concurring)*. Two of the most important resources of the judicial system are the time of its judges and the pool of knowledgeable citizens from which jurors are drawn. The jury selection statutes as construed by the majority in this case waste the time of the trial judge in administrative detail. They do not permit initial screening of potential jurors so as to remove the recalcitrant or the obviously unqualified, thereby unnecessarily increasing the court time which must be devoted by the trial judge and lawyers to jury selection.

I agree that jury duty is one of the most important obligations of citizenship. However, we should be realistic enough to acknowledge that persons who are unwilling to serve because of illness, inconvenience or lack of confidence do not make good jurors. The parties to a case are entitled to a jury made up of citizens who are motivated and able to perform their duties.

The increasing complexity of the issues presented to juries in cases such as medical malpractice and products liability today requires more than a minimum "understanding" of the English language on the part of potential jurors. Jurors today must decide cases raising difficult and complicated questions dealing with accounting problems and engineering design. It makes no sense to argue about the nuances of complicated instructions, if we have no assurance that the jurors sitting in the case have the linguistic ability to recognize, comprehend, analyze or understand the same. If they do not, the instructions are an exercise in futility and the parties litigant are not receiving due process of law.

The majority says that jury commissioner Roman Witkowiak testified that the commissioners "occasionally sought counsel" from the chief judge while exercising "their own discretion" in excluding persons. Excerpts of his testimony on this point are as follows:

*"Q. Sir, do you have, in your possession, or do you know of any orders entered by either Chief Judge Sullivan or Chief Judge Manian setting up guidelines as to when you can suggest somebody to be permanently excused?*

*"A. Yes, I do have. When I saw this questionnaire and saw all the answers on there, the answers on here is what prompts us to either excuse them for a two year period, permanently or to disqualify them; and any of them that were excused permanently or for a two year period, were sent up to the Judge, the Chief Judge. . . ."*

*"A. . . . And we religiously check every questionnaire and don't excuse a person if we're not sure, we take it up to the Judge, even until this day.*

*". . .*

*"Q. Now, in Judge Sullivan's letter, to your knowledge, are there any guidelines or are there any standards set forth from which you can determine whether a person is excludeable [sic] or excuseable?*

*"A. Well, we did set up some rules long ago. We don't follow them because we changed the questionnaire quite a bit. The questionnaire is such now that you can get your answers on every one; and if you look through those, you'll see that we do not excuse anybody unless he's on a dead—he died or he's on a deathbed or he's unable to walk. But, he's got to specify it himself. We do not exclude even blind people or people in wheelchairs if they so indicate that disability will not prevent them from serving on a jury. We even put those on a jury. And if we have questions, whatsoever, regarding excusing them permanently, we'll go to the Chief Judge."*

It is clear that the jury commissioners claim no discretion to exclude any person from jury service who does not answer affirmatively to question six on the jury questionnaire that he or she has disabilities that prevent him or her from serving as a juror. The worst that can be said about the current Milwaukee County practice is that the jury commissioners exercise their discretion to take citizens at their word in making a recommendation to the chief judge.

I do not agree with the majority that secs. 756.01 and 756.02, Stats., must be construed so as to place all responsibility for disqualifying a juror on the judge, as well as the responsibility for exempting or excluding the juror. Sec. 756.01(2), Stats., states that a person shall not be exempted, excluded or disqualified from jury service on the ground of infirmity because of *a physical condition* unless "the judge finds that the person clearly cannot fulfill the responsibilities of a juror." The judge is not to consider structural limitations in making such a finding. The clear meaning of this provision is that a physical disability as to mobility does not disqualify one from eligibility for jury duty. Any infirmity which is not a physical condition does not fall within the provision. As to those persons, I find the provisions of sec. 756.04(2)(a), Stats., applicable.

"The commissioners shall revise the list by striking from it the names of persons *found by them* to be ineligible for jury service, as provided in s. 756.01, and add to the list the names of additional persons as provided in s. 756.05." (emphasis supplied).

I see no need for "guidelines" drawn by the chief judge or "findings of fact" by the jury commissioner recommending exclusion. The twelve examples given by the majority are straightforward. I am confident the judges responsible for granting or denying screening recommendations made by the commissioners are perfectly capable of exercising their well-reasoned judgment in this matter. There is no reason to create more red tape for our citizens than they currently have to deal with. Potential jurors are entitled to fair treatment also. A requirement of documentation such as a letter from a physician to support a request for exclusion causes unnecessary expense and consumption of time of both the doctor and the prospective juror. Further, it tends to suggest an official distrust of the motives of

our citizens, who are supposed to be the beneficiaries, not the antagonists, of our judicial system. In addition, I see no reason why the court's directions apply only to the chief judge of Milwaukee County, and not to the chief judges of the other administrative districts. If a Milwaukee County judge draws a jury from another county after a change of venue, are the Milwaukee County rules to be applied? Do not the statutes mandate a unified court system?

I agree with the majority that the decision of the court of appeals should be affirmed. For the reasons expressed, I disagree with the dicta relating to procedures to be followed by the chief judge and the jury commissioners in implementing the court's construction of ch. 756, Stats. I also recommend to the legislature that the current jury selection statutes, as construed by the majority, be amended so as to permit the common sense, practical approach to the question which has been undertaken in Milwaukee County as disclosed by the record in this case. Further, I suggest that the legislature return to the jury qualification statutes the provision that jurors should be those who are esteemed in their communities to be of good character and sound judgment. The jury commissioners should be given the authority to inquire as to the reputation and character of prospective jurors. The goals of having an intelligent jury represent a cross section of the community and having the citizenry recognize the obligation of jury service can be promoted without subjecting those who are ill or infirm or are senior citizens to the burden of documenting their requests for exclusion by letters from their physicians and without creating the potential for yet another level of bureaucracy to intrude into their privacy under the guise of jury duty for all.

I am authorized to state that Mr. Justice WILLIAM G. CALLOW joins in this concurrence.