STATE of Wisconsin, Plaintiff-Appellant,

v.

Chambeous COBLE, Defendant-Appellant.
[Case No. 80–505–CR.]

STATE of Wisconsin, Plaintiff-Respondent,

v.

Chambeous COBLE, Defendant-Appellant.†
[Case No. 80–517–CR.]

Court of Appeals

*Nos. 80–505–CR, 80–517–CR. Argued March 25, 1980.—
Decided March 31, 1980.*
(Also reported in 291 N.W.2d 652.)

For the plaintiff-appellant, the cause was submitted on the brief of *E. Michael McCann,* district attorney, with whom on the brief was *Lee Wells,* deputy district attorney, and oral argument by *Mr. Wells.*

On behalf of Chief Judge Victor Manian, amicus curiae, a brief was submitted by *Gerard S. Paradowski,* acting corporation counsel of Milwaukee County, and oral argument by *Mr. Paradowski.*

† Petition to review granted.

For the defendant-appellant, the cause was submitted on the brief of *Dennis P. Coffey* and *Coffey & Coffey*, of Milwaukee, and oral argument by *Dennis P. Coffey*.

Before Decker, C.J., Moser, P.J., and Cannon, J.

MOSER, P.J. These are consolidated permissive appeals from two nonfinal orders pursuant to sec. 809.50, Stats., whereby both petitioners challenge the present system for jury selection in Milwaukee county.

The defendant, Chambeous Coble, was convicted after a jury trial of endangering safety by conduct regardless of life in violation of sec. 941.30, Stats. The verdict was returned on March 19, 1980. Prior to trial, both the state and the defendant, Coble, challenged the jury panel selection process: Coble brought a motion for a continuance; the state brought a motion to strike the entire jury panel and to impanel a new jury in compliance with the Wisconsin Statutes. Both parties claimed that the selection process used violated various provisions of ch. 756 of the Wisconsin Statutes. Coble also claimed that the selection process used violated the rights guaranteed him under the Wisconsin and United States Constitutions. Both parties appeal from the trial court's denial of their respective motions. Milwaukee County Chief Judge Victor Manian joins in this appeal by order of this court as an intervenor arguing for affirmance of the trial court.

The trial court conducted a pretrial hearing concerning the propriety of the jury selection method used in this case. Jury Commissioner Roman Witkowiak, one of three jury commissioners for Milwaukee county, testified concerning the jury selection method used. He testified that fifty thousand qualification forms are sent to approximately fifty thousand potential jurors during a year. Question 6 of the jury qualification form reads: "Do you have any disabilities that would prevent you

from serving as a juror?" The existent practice, which was followed in this case, is for the jury commissioners to revise the countywide jury list on the basis of the answer to this question by striking the names of those persons found by them to be ineligible for jury service. *See* secs. 756.01, 756.04, Stats.

Commissioner Witkowiak estimated that about 2218 jury qualification forms were sent out by him in early January of 1980 to obtain qualified jury panels for the months of February and March of the same year. From those forms, the following results were obtained:

52% qualified for jury duty;
24.6% permanently excluded from jury duty;
8.8% temporarily excluded from jury duty;
14.1% questionnaires returned marked "no addressee located" by postal authorities.

The state provides, as a part of the record for appeal, a random sample of twelve of the qualification forms of prospective jurors who were permanently excused from jury service. The random sample reveals answers to question 6 ranging from descriptions of personal illness to statements of personal inconvenience to simple lack of interest. One prospective juror stated she was incapable of reading, writing, or understanding English, while another merely stated she had an improper education. Six prospective jurors made health-related claims: "recurring gout;" "allergies and sleepiness;" "allergies and arthritis;" "CVA Aphasia;" a seventy-two-year-old woman's claim of not being "well;" and a sixty-seven-year-old woman's claim of lack of "stamina." One prospective juror from the sample claimed "job requirements" as an excuse, another claimed a lack of self-confidence and his age (seventy-six years), while the final two simply stated a lack of interest.

These prospective jurors were excluded pursuant to sec. 756.04(2)(a) Stats., and a written communication

from Chief Judge Manian on January 11, 1980. All juror qualification forms for excluded and qualified jurors were submitted to Judge Manian and then routed to jury management service where the excluded jurors were removed from the selection process and the qualified jurors were summoned for service. Judge Manian testified at the hearing that he did not review, investigate, or personally examine the qualification forms submitted to him by the jury commission.

The issues on appeal are essentially twofold: (1) whether the jury commissioners violated statutory provisions of ch. 756 of the Wisconsin Statutes by excusing potential jurors from jury service without a discretionary act of the chief judge; and, (2) whether the excuse of potential jurors by jury commissioners for allegedly noncompelling reasons violates either the United States or Wisconsin Constitutions.

## I. JURY COMMISSIONERS

The state and the defendant argue that the jury commissioners were improperly exercising judicial discretion by excusing potential jurors from the jury array in this case. They claim that only patently unqualified jurors can be disqualified by jury commissioners. Specifically, they point to some language of sec. 756.01, Stats., which requires jurors to be electors, U. S. citizens, and able to read and write the English language. Only those potential jurors who fail to qualify under these "facial" requirements can be disqualified by commissioners; all other "excuses," they argue, require an exercise of judicial discretion by the chief judge of Milwaukee county. We disagree.

Section 756.04 (2) (a), Stats., governing the authority of jury commissioners over jury qualifications, provides in part:

The commissioners shall annually before the first Monday in April provide for each court covered by sub. (1), unless the judge or judges thereof otherwise order, one countywide list of not less than 600 names of persons to be drawn from the county to serve as petit jurors. *The Commissioners shall revise the list by striking from it the names of persons found by them to be ineligible for jury service, as provided in s. 756.01,* and add to the list the names of additional persons as provided in s. 756.05. [Emphasis supplied.]

The extent of the authority possessed by jury commissioners to strike those potential jurors found by them to be ineligible, as sec. 756.04(2)(a) indicates, is defined by sec. 756.01(1). Section 756.01(1) provides:

Persons who are U. S. citizens, who are electors of the state, *who are possessed of their natural faculties, who are not infirm,* who are able to read and understand the English language, and who have not been summoned to attend for prospective service as a petit juror for the time period applicable under s. 756.04(5m) within 2 years, shall be liable to be drawn as grand or petit jurors. [Emphasis supplied.]

Jury commissioners therefore can strike not only those who fail to meet the basic minimum requirements of being electors, U. S. citizens, and able to read and understand English, as appellants contend, but also those who are infirm or not possessed of their natural faculties.[1] The latter two criteria are health-related factors which allow the jury commissioners broader authority than a simple check for basic "minimal requirements."

Appellants claim, however, that judicial discretion is required as a prerequisite to excusing potential jurors from jury service. Specifically, they argue that the chief

---

[1] Webster's Dictionary defines "infirm" as follows: "not strong or sound, physically." Webster's Third Int'l. Dictionary 1159 (1971). "Faculty" is defined as the "ability to act or do whether inborn or cultivated." *Id.* at 814.

judge must exercise that discretion. They also argue that that responsibility cannot be delegated to jury commissioners. They claim that two provisions of ch. 756, secs. 756.02(2)(a) and 756.01(2), Stats., explicitly require such a construction.

Section 756.02(2)(a), Stats., provides in part:

Any person or group of persons may be excluded from the jury panel or excused from service as jurors by order of the judge based on a finding that jury service would entail undue hardship, extreme inconvenience or serious obstruction or delay in the fair and impartial administration of justice.

Section 756.01(2) provides in part:

Subsection (1) shall not exempt, exclude or disqualify a person from jury service on the ground of infirmity because of a physical condition unless the judge finds that the person clearly cannot fulfill the responsibilities of a juror.

Both sections use the term "judge." Thus, ch. 756 contains apparently conflicting language: two statutory provisions apparently require examination by the judge, while another authorizes the screening of qualifications by jury commissioners. Statutes which are *in pari materia*,[2] or concern the same subject matter should, if possible, be construed to be in harmony with one another.[3]

This court is of the opinion that the several provisions from ch. 756 can be construed harmoniously in this case. The jury commission initially screens potential jurors under sec. 756.04(2)(a), Stats. After the potential jurors are screened, and qualified jurors are summoned for service under sec. 756.08, the jury panel is formed. Once

---

[2] 2A Sutherland, *Statutory Construction* §51.02, p. 290 (4th ed. 1973).

[3] *State v. Schaller*, 70 Wis.2d 107, 110, 233 N.W.2d 416, 418 (1975); *State v. Gould*, 56 Wis.2d 808, 812, 202 N.W.2d 903, 905 (1973).

impaneled, a judge—not necessarily the chief judge—may exclude or excuse members of the new jury panel at the jury orientation session on the basis of "undue hardship, extreme inconvenience or serious obstruction or delay in the fair and impartial administration of justice." Sec. 756.02(2)(a). The language of sec. 756.02(2)(a) which refers to the responsibilities of "the judge" refers to the time sequence in jury selection after the jury is impaneled, and does not conflict with the jury commissioners' initial responsibility under secs. 756.04(2)(a) and 756.01(1).

The argument that sec. 756.01(2), Stats., requires an act of judicial discretion in the initial screening of potential jurors is equally without merit. Section 756.01 (2), originally sec. 255.01(2) (1975), was created by ch. 275 of the Laws of 1975.[4] The statutory language was a product of Assembly Bill 1 of 1975,[5] which, in turn, resulted from a report from *Wisconsin's Task Force on Problems of People with Physical Handicaps.*[6] The enactment of sec. 255.01(2), was part of a panoply of legislative changes passed under this bill concerning the problems of handicapped persons.[7] The legislative analysis preceding the bill indicates that the intent was to extend "antidiscrimination legislation to ensure non-discrimina-

---

[4] 1975 Wis. Laws ch. 275, §22.

[5] 1975 Wis. A. B. 1.

[6] *See Final Report,* Wisconsin's Task Force on Problems of People With Physical Handicaps 33 (July 19, 1974).

[7] Assembly Bill 1 was denominated as:

AN ACT to renumber 10.06(2)(c) to (i); to amend 6.30(2), 6.86, 6.87(1), 10.01(2) (intro.), 16.765(1) and (2)(a), 66.432(1) and (2), 101.22(1), (1m)(b) and (4n), 111.31, 111.32(5)(a), 118.13, 138.20(1), 227.033, 255.01, 255.02(3)(c), 625.12(2), 625.13, and 942.04(1)(a) to (c); to repeal and recreate 111.32(5)(f); and to create 5.25(3), 6.82(1)(c), 7.15(1)(j), 10.01(2)(e), 10.06 (2)(c), (f), (i) and (L), 101.223 and 255.01(2) of the statutes, relating to civil rights for the physically disabled.

Bull. of Proc. of the 1975 Wis. Leg. 43.

tory treatment of the physically disabled."[8] Another passage from that analysis indicates that the bill was intended to prevent "a person who has a physical disability or a mobility problem from being exempted, excluded or disqualified from jury service unless the judge finds that the person clearly cannot fulfill the responsibilities of a juror."[9] The narrow purpose of sec. 756.-01(2) is revealed by the second sentence of sec. 756.01, which provides: "The judge shall not consider the structural, physical or architectural limitations or barriers of a building, courtroom, jury box or other facility in making such a finding."

The legislative intent of sec. 756.01(2), Stats., therefore, is not to make a judge primarily responsible for the examination of potential jurors' qualifications, but merely to prevent discrimination against the handicapped or disabled. The broad intent of the subsection, as is apparent from the legislative history, is to prevent discrimination against the handicapped at all stages of jury selection—both during initial screening by the jury commissioners and during the orientation by a judge under sec. 756.02(2)(a). It is also significant here that the clear legislative purpose of sec. 756.01(2) is to protect jurors and not litigants. The concern of the legislature was for the handicapped potential juror who was discriminated against by not being allowed to serve on a jury, for example, because of the physical limitation of the jury box.[10] The legislative history of the statute re-

---

[8] 1975 A. B. 1 (Analysis by the Legislative Reference Bureau.)
[9] *Id.*
[10] *See Final Report, supra* note 6, at 33, where the task force indicated for whose protection the bill was being proposed:
Witnesses at the public hearings identified specific language in the statutes and administrative rules which clearly discriminated against people with physical disabilities or which included terms they found offensive. The most flagrant example, Section 255.10 of the Wisconsin Statutes, prohibits the "infirm" from serving on

veals no concern for a litigant who claims an inadequate jury panel because of the absence of a handicapped person. Section 756.01(2) clearly was not enacted to mandate the exercise of judicial discretion during the first stage of jury selection.

Our conclusion that jury commissioners have initial responsibility for screening potential jurors under ch. 756 is buttressed by a commonsense view of our present-day jury selection system. Statutes must be given a contemporary and practical interpretation.[11] Such a construction is required if statutes are to be interpreted to avoid absurd results. It would indeed be absurd to require the chief judge to exercise his personal discretion under these circumstances. Individualized screening of all potential jurors based upon the juror qualification forms is a cumbersome and time-consuming task. The fact that potential jurors are chosen at random from electoral lists by a computerized system is a reflection of the massiveness of that task. Clearly Chief Judge Manian could not possibly personally review the forms. His testimony that he in fact did not review the forms does not indicate an abdication of responsibility, but is rather a matter of practical necessity in light of the many responsibilities of the chief judge of the Milwaukee county court system. Although appellants offered al-

---

juries. To remedy this clear denial of individual rights, THE TASK FORCE RECOMMENDS:

To the Legislature:

1. *Amendment of the statute to prohibit exception, exclusion, or disqualification of jurors with physical disabilities unless the judge finds that the individual clearly cannot fulfill the responsibilities of a juror. The judge's decisions should consider only individual limitations in relation to the case. That determination must not include socially imposed limitations such as the structural or architectural barriers of a building, courtroom, jury box or other facility.* [Emphasis original.]

[11] Sutherland, *supra* note 2, at §49.03, p. 233.

ternative methods for the chief judge to exercise his discretion in reviewing the excuses of potential jurors, we do not find these methods to be either workable or authorized by statute.

The chief judge, however, does exercise supervisory authority over the jury selection methods under secs. 756.04(2)(a) and 756.01(1), Stats. By virtue of his statutory authority, the chief judge exercises "full administrative power of the judicial branch of government [in his district] subject to the administrative control of the supreme court." Sec. 757.64. He is the "administrative chief of the judicial administrative district," which includes the "[m]aintenance of a system for and effective management of caseflow through the judicial administrative district." Secs. 757.63(1), 757.63(3)(b). The chief judge accordingly exercises supervisory authority over jury commissioners in the exercise of their responsibility. Should jury commissioners fail to properly perform their duties, they are subject to the authority and discipline of the chief judge. Sec. 757.64.

There was an irregularity in the performance of the duty of the jury commissioners in this case. The full scope of the authority of jury commissioners to strike potential jurors under sec. 756.04(2)(a), Stats., is provided by sec. 756.01(1). Only those who are not U. S. citizens or electors of the state, who are not possessed of their natural faculties, who are infirm, who cannot read and understand the English language, or who have served as petit jurors within the last two years may be excused under that subsection. As the statute provides, all others "shall be liable to be drawn as grand or petit jurors." Any other reasons for inability to serve must be presented to a judge under sec. 756.02(2)(a).

Although we will not question the judgment of the jury commission in this case, we note that several of the excuses granted by the jury commissioners were beyond

the scope of sec. 756.01(1), Stats. Improper education is not a valid criterion unless that person cannot read or understand English. Also, job requirements and a simple lack of interest are not proper considerations for jury commissioners. On the other hand, a lack of capacity to read or understand English is a proper excuse. In addition, the seventy-six-year-old man who stated a lack of self-confidence was properly excused if the commissioners viewed the man as "infirm." The health-related claims fall within sec. 756.01(1) if the person is "infirm" or not possessed of his/her "natural faculties." These terms should be read broadly to include, for example, an allergy victim who would be rendered an incapable juror as a result of his or her illness.

While some potentially qualified jurors were excused from the panel, the panel nevertheless consisted of qualified jurors. Thus, although there was irregular statutory compliance, no prejudice inured to the parties involved. Accordingly, the trial court's ruling in favor of the jury panel at issue is approved. In the future, however, the jury commissioners should more closely scrutinize replies to juror qualification forms to insure that all qualified potential jurors comply with the vital civil obligation of service on a jury.

## II. CONSTITUTIONAL QUESTION

The defendant, Coble, also challenges the jury panel at issue under the due process clauses of the United States and Wisconsin Constitutions.[12] The underlying bases of his claim are his constitutional rights to a fair and impartial jury under the sixth amendment to the

[12] Art. I, §1 of the Wisconsin Constitution is substantially the equivalent of the due process and equal protection clauses of the United States Constitution. *Buse v. Smith*, 74 Wis.2d 550, 564, 247 N.W.2d 141, 147 (1976).

United States Constitution and art. I, §5 of the Wisconsin Constitution.

The constitutional right to a fair and impartial jury has been interpreted by the United States Supreme Court to require jury selection procedures which draw potential jurors from a cross-section of the community.[13] The jury should " 'be a body truly representative of the community,' and not the organ of any special group or class."[14]

The party challenging the jury array has the burden to establish a *prima facie* case that some particular group or class of people has been systematically and intentionally excluded from jury service.[15] The United States Supreme Court in the recent case of *Duren v. Missouri*[16] held that:

"[i]n order to establish a *prima facie* violation of the fair cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process."[17]

The issue in this case is whether some "distinctive" group was systematically excluded from the jury panel. Coble must show that there was some common thread running through the excluded group—a basic similarity of attitudes, ideas or experience—which prevents the

[13] *Taylor v. La.*, 419 U.S. 522, 527 (1975); *Brown v. Allen*, 344 U.S. 443, 474 (1953); *Brown v. State*, 58 Wis.2d 158, 163, 205 N.W.2d 566, 569 (1973).

[14] *Glasser v. United States*, 315 U.S. 60, 85–86 (1942).

[15] *Thiel v. S. Pac. Co.*, 328 U.S. 217, 220 (1946); *Witherspoon v. Ill.*, 391 U.S. 510, 518 (1968).

[16] 439 U.S. 357 (1979).

[17] *Id.* at 364. *See also State v. Holmstrom*, 43 Wis.2d 465, 472, 168 N.W.2d 574, 578 (1969). *See generally State v. Grady*, 93 Wis.2d 1, 286 N.W.2d 607 (Ct. App. 1979).

juries selected from representing a fair cross-section of the community.[18] This excluded group must be properly characterized as a particular age, sexual economic, social, religious, racial, geographical or other group.[19] In *Taylor v. Louisiana*,[20] for example, the United States Supreme Court found a violation of the cross-section rule where women were systematically excluded from the selection system unless they had previously filed a written declaration of their desire to be subject to jury service. The result was the denial of a fair trial to the male defendant and a reversal of his conviction.

It cannot legitimately be contended that any particular group of persons has been systematically excluded in this case. There is no distinctive characteristic common to all the jurors excused. In fact, there is no contention that those excluded were part of the same age, racial, sexual, religious, social, geographical or other group. Rather, Coble argues that the common characteristic of the excluded group was that they were all "qualified jurors." This is far too amorphous a classification to be characterized as a "distinctive" group. Moreover, the fallacy underlying Coble's argument is that while qualified jurors were excused, all the jurors on the panel were nonetheless qualified. The panel still represented a fair cross-section of the community.

An analogy can be drawn to the Wisconsin Supreme Court case of *State v. Bond*.[21] There the defendant chal-

---

[18] *Adams v. Superior Ct.*, 12 Cal.3d 55, 524 P.2d 375, 378, 115 Cal. Rptr. 247, 250 (1974); *United States v. Arlt*, 567 F.2d 1295, 1297 (5th Cir. 1978) *cert. denied*, 436 U.S. 911 (1978); *State v. Zicarelli*, 154 N.J. 347, 381 A.2d 398, 402 (1977); *See also* Kuhn, *Jury Discrimination: The Next Phase*, 41 S. Cal. L. Rev. 235, 306 (1968); 47 Am. Jur. 2d, *Jury* §165 (2d ed. 1969).

[19] *Brown v. State*, *supra* note 13, at 163, 205 N.W.2d at 569; *State v. Holmstrom*, *supra* note 17.

[20] 419 U.S. 522, 537 (1975).

[21] 41 Wis.2d 219, 163 N.W.2d 601 (1969).

lenged the poll lists as the basis of jury selection as denying him a cross-section of the community. The court summarily rejected the argument. While otherwise qualified jurors may not be electors, the poll lists themselves constitute a fair cross-section of the community.[22] The same reasoning applies in this case.

The prescription of reasonable qualifications in sec. 756.01(1), Stats., satisfies the fair cross-section rule. The United States Supreme Court recognized the necessity for such qualifications in *Taylor v. Louisiana:*

Our holding does not augur or authorize the fashioning of detailed jury-selection codes by federal courts.. The fair-cross-section principle must have much leeway in application. The States remain free to prescribe relevant qualifications for their jurors and to provide reasonable exemptions so long as it may be fairly said that the jury lists or panels are representative of the community.[23]

Since Coble's constitutional argument is without merit, a new trial is not required in the interest of justice on the basis of that claim. In addition, while there were irregular statutory procedures, no prejudice accrued to the defendant as a result thereof. The orders of the trial court are therefore affirmed.

*By the Court.*—Orders affirmed.

---

[22] Id. at 225–26, 163 N.W.2d at 604.

[23] Taylor *supra* note 13, at 537–58.