STATE of Wisconsin, Plaintiff-Respondent,

V.

Raymond CLAUSEN, Defendant-Appellant-Petitioner.†

Supreme Court

*No. 80–1273–CR. Argued November 4, 1981.
—Decided January 5, 1982.*

(Also reported in 313 N.W.2d 819.)

† Motion for reconsideration denied, without costs, on February 8, 1982.

For the appellant-petitioner there were briefs and oral argument by *William J. Tyroler,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *Mary V. Bowman,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

WILLIAM G. CALLOW, J.   This is a review of a decision of the court of appeals affirming the September 20, 1979, judgment of Raymond Clausen's conviction for home improvement fraud, contrary to sec. 100.20(2),

Stats., as implemented by Wis. Adm. Code, sec. Ag 110.-02(7)(b), and sec. 100.26(3), Stats., entered by Milwaukee county circuit court Judge Patricia S. Curley.

The facts in this case reveal that on November 21, 1978, defendant Raymond L. Clausen entered into a contract with Pablo M. Borda and his father to perform certain home improvement work,[1] for a contract price of $1,900. Borda paid a $250 down payment and continued to make payments pursuant to the contract schedule, totaling $1,322. The contract provided that work would commence November 21, 1978, and be completed by April 15, 1979.

Defendant Clausen ceased working on the Borda home shortly before Christmas, 1978. Borda attempted to contact Clausen approximately ten times following this to ascertain when the work would be completed. When Borda was able to speak with Clausen, Clausen informed him that he was not working on the home because either the weather was inclement[2] or his assistant was hospitalized or unavailable. Clausen never told Borda that he would be unable to complete the work or provided him with a date when the work would be finished. Evidence in the record reveals that during February, March, and April, 1979, Clausen was working on three or four

[1] The circuit court transcript in this case reveals that Clausen apparently solicited the contract:

"*Q.* Mr. Borda, when was the first time that you heard or saw Mr. Clausen? *A.* It was outside the house when employee from repair program belonged to the city was at the house looking around what has to be done; and after he left, Mr. Clausen approached, and he asked me if I had to be done some job in the house. I say, 'Yeah.' 'What I can do for you,' he said. And then he looking around, and then I told him what I want to be done to the house."

[2] Clausen testified at trial that the temperature would have to be 60° F. before the wood on the Borda house could be primed and painted.

other contracts, notably for the remodeling of a Ben Franklin store, and that "in most instances" Clausen performed the work on those contracts himself.

On April 15, 1979, Borda phoned Clausen and informed him that he had one week to complete the work before Borda would consult his attorney. When the week elapsed, Borda hired a new contractor to complete the job.[3] Clausen was then charged with violating sec. 100.- 20(2), Stats. 1977,[4] as implemented by Wis. Adm. Code

[3] The complaint in this matter reveals that Clausen failed to complete the following work: (1) lower interior window in upper front room; (2) scrape, sand, or brush loose or peeling paint, and prime new wood; (3) paint exterior trim; and (4) prepare and paint gutters and downspouts. At trial Borda testified that some of the work Clausen did complete was unsatisfactory. For example, Clausen installed a gutter which fell down a month later. Clausen allegedly constructed a new railing on the upper porch deck with used instead of new wood, and he failed to properly prepare the railing for painting.

[4] Sec. 100.20, Stats. 1977, provides:

"100.20 **Methods of competition and trade practices.** (1) Methods of competition in business and trade practices in business shall be fair. Unfair methods of competition in business and unfair trade practices in business are hereby prohibited.

"(2) The department, after public hearing, may issue general orders forbidding methods of competition in business or trade practices in business which are determined by the department to be unfair. The department, after public hearing, may issue general orders prescribing methods of competition in business or trade practices in business which are determined by the department to be fair.

"(3) The department, after public hearing, may issue a special order against any person, enjoining such person from employing any method of competition in business or trade practice in business which is determined by the department to be unfair. The department, after public hearing, may issue a special order against any person, requiring such person to employ the method of competition in business or trade practice in business which is determined by the department to be fair.

sec. Ag 110.02(7)(b) and sec. 100.26(3), Stats. 1977.[5] [Hereinafter all citations will be to the 1977 Wis. Stats.] Clausen's defense was that he was unable to complete the project because of a delay beyond his control.

The issue before us on this appeal is the propriety and constitutionality of a jury instruction given at Clausen's trial. Clausen was charged with failing to complete

"(4) The department of justice may file a written complaint with the department alleging that the person named is employing unfair methods of competition in business or unfair trade practices in business or both. Whenever such a complaint is filed it shall be the duty of the department to proceed, after proper notice and in accordance with its rules, to the hearing and adjudication of the matters alleged, and a representative of the department of justice designated by the attorney general may appear before the department in such proceedings. The department of justice shall be entitled to judicial review of the decisions and orders of the department under ch. 227.

"(5) Any person suffering pecuniary loss because of a violation by any other person of any order issued under this section may sue for damages therefor in any court of competent jurisdiction and shall recover twice the amount of such pecuniary loss, together with costs, including a reasonable attorney's fee.

"(6) The department may commence an action in circuit court in the name of the state to restrain by temporary or permanent injunction the violation of any order issued under this section. The court may in its discretion, prior to entry of final judgment make such orders or judgments as may be necessary to restore to any person any pecuniary loss suffered because of the acts or practices involved in the action, provided proof thereof is submitted to the satisfaction of the court. The department may use its authority in ss. 93.14 and 93.15 to investigate violations of any order issued under this section."

[5] Sec. 100.26(3), Stats. 1977, provides:

"100.26 **Penalties.** . . .

". . .

"(3) Any person who violates s. 100.15, 100.19, 100.20 or 100.22, or who intentionally refuses, neglects or fails to obey any regulation made under s. 100.19 or 100.20, shall, for each offense, be fined not less than $25 nor more than $5,000, or imprisoned in the county jail for not more than one year or both."

work on the date specified in the Borda home improvement contract, in violation of the Wisconsin Administrative Code provision dealing with prohibited trade practices. Wis. Adm. Code sec. Ag 110.02 [hereinafter Ag 110.02] provides in pertinent part:

"*Ag 110.02* **Prohibited trade practices.** No seller shall engage in the following unfair methods of competition or unfair trade practices:
". . . .
"(7) . . .
"(b) Fail to begin or complete work on the dates or within the time period specified in the home improvement contract, or as otherwise represented, unless the delay is for reason of labor stoppage, unavailability of supplies or materials, unavoidable casualties, or any other cause beyond the seller's control. Any changes in the dates or time periods stated in a written contract shall be agreed to in writing.
"(c) Fail to give timely notice to the buyer of reasons beyond the seller's control for any delay in performance, and when the work will begin or be completed."

Clausen was specifically charged under Ag 110.02(7) (b) above. He defended on the grounds that he had informed Borda that inclement weather and unavailability of help precluded his timely completion of the contract. After instructing the jury on the elements of the offense,[6] the trial court gave the following instructions which are the subject of our review:

"Wisconsin law requires that a home improvement contractor begin or complete work on the dates or within

---

[6] The four elements of the crime are: (1) That the defendant was engaged in an operation or work which constituted home improvement; (2) that the defendant entered into a home improvement contract with an owner, tenant, or lessee of residential property; (3) that the defendant represented either in the contract or verbally when he would begin or complete the home improvement work; (4) that the defendant failed to begin or complete the work within the time he represented that he would do so.

the time period in which the contractor represented either in the contract or verbally that he would do so unless the delay is for reason of labor stoppage, unavailability of supplies or materials, unavoidable casualties, or any other cause beyond the seller's control.

"...

"The home improvement law recognizes that there may be reasons beyond the control of the seller of home improvements which delay his performance of the work. However, *the home improvement law requires that timely notice be given to the buyer of the home improvements informing the buyer of the reasons of the delay in performance and when the work will begin or be completed.*" (Emphasis added.)

As authority for the above italicized instruction, the trial court relied upon Ag 110.02(7)(c). The defense counsel objected to this instruction, contending that he had prepared a defense tailored to the charge in the complaint [Ag 110.02(7)(*b*)] and that the instruction regarding timely notice broadened the elements of the charged offense by including a description of a violation under Ag 110.02(7)(*c*). The trial court responded by noting that subsection (7)(c) "wouldn't have to be charged . . . in order to have it become relevant. The purpose of jury instructions is to advise the jurors as to the law." The trial court went on to say, "that if, in fact, this is the law and defense has come up regarding the performance under a contract, that the jury is entitled to that information."

The defendant Clausen claimed that at the beginning of the trial the *state* had drafted and brought to the court an instruction dealing with elements of the crime, and it had been given to the jury. The court noted the instruction was given at the beginning of the trial at the request of the *defense* counsel. Defense counsel objected to the notice instruction being given at the close of the trial because he said, "I predicated my defense on what I thought the instruction was going to be." The court ob-

served that elements of the offense are distinguishable from defenses and that the court must instruct on the law after the close of testimony, giving attention to the law as it applies to the defenses raised; that the state cannot be expected to know what the defenses will be at the beginning of the trial.

The trial court stated that the defense was based on justifiable delay, and the state then asked for the instruction on the law dealing with the notice requirement of that defense to be brought to the attention of the jury. The court went on to say, "It would seem to me that you would also be assumed to know what the law was regarding the defense on which you relied upon." The court concluded that the instruction dealing with the requirement that timely notice be given for the reasons of delay in performance did "not modify" the instructions on elements of the charged offense, and it gave the requested instruction.

The court of appeals affirmed, holding "[t]he fact that the instruction incorporates language drawn from subsection (c) does not alter the appropriateness of the instruction in the context of a charge of violating subsection (b). We reject the defendant's contention that the instruction charged an offense other than pursuant to regulation (b)." We affirm the decision of the court of appeals and hold that Clausen's rights to due process and adequate notice were not violated by inclusion of the jury instruction at issue.[7]

---

[7] The court of appeals also drew the following conclusion which we reject:

"[Subsection (b)] provides relief for uncontrollable delays *if* the seller establishes that they are beyond his control *and* requires him to negotiate a written agreement with the buyer to changes in the dates and time periods specified in the written contract." (Emphasis in original.)

We read the last sentence of subsection (b) ("Any changes in

We note that the home improvement trade is subject to comprehensive and stringent rules designed to protect the consumer. In a recent decision dealing with a violation of Chapter Ag 110 and a penalty imposed under sec. 100.26(3), Stats., the court of appeals concluded:

"The history of the statute [100.26(3)] makes it plain that the legislature intended that there be no excuse for failing to follow the rules. With the public outcry concerning the home improvement trade in the last several years, one would think that anyone connected with the home improvement trade would first and foremost make sure that they were following the rules explicitly. In this case, despite the clear and unconfusing guidelines mentioned in the administrative code relating to preparing a contract with consumers, [the defendant] deviated from the directions. That imprudence is specifically what the statute was designed to prevent. There is no excuse for failing to follow the code."

*State v. Balestrieri,* 87 Wis. 2d 1, 8, 274 N.W.2d 269 (Ct. App. 1978), *affd. by an evenly divided court* 96 Wis. 2d 361, 291 N.W.2d 579 (1980) (per curiam opinion, concluding sec. 100.26(3), dealing with neglecting or failing to obey any regulation or order, does not require proof of intent). We are cognizant that any penal statute must be construed strictly in favor of the defendant. *E.g., State v. Schaller,* 70 Wis. 2d 107, 110, 233 N.W.2d 416 (1975); *State ex rel. Gaynon v. Krueger,* 31 Wis. 2d 609, 619, 143 N.W.2d 437 (1966); *State v. Wrobel,* 24 Wis. 2d 270, 275, 128 N.W.2d 629 (1964). A statute must be construed, however, in light of its manifest object, the evil sought to be remedied. "Although we recog-

the dates or time periods stated in a written contract shall be agreed to in writing") to follow ordinary contract law and to mean that if the parties to the original contract agree to a new completion date, then they must reduce any oral agreement to writing. This would avoid any overreaching where one party would assert an orally agreed upon date to the disadvantage of the other party.

nize the general rule relied upon by the defendants as stated in *State v. Schaller,* 70 Wis. 2d 107, 233 N.W.2d 416 (1975), that penal statutes are to be strictly construed in favor of the accused, it is equally true that this rule of construction does not mean that only the narrowest possible construction must be adopted in disregard of the purpose of the statute." *State v. Tronca,* 84 Wis. 2d 68, 80, 267 N.W.2d 216 (1978). *See also: State ex rel. State Public Defender v. Percy,* 97 Wis. 2d 627, 635, 294 N.W.2d 528 (Ct. App. 1980) ; *Berns v. Wisconsin Employment Relations Comm.,* 99 Wis. 2d 252, 265, 299 N.W.2d 248 (1980) ; *State ex rel. First National Bank & Trust v. Skow,* 91 Wis. 2d 773, 779, 284 N.W.2d 74 (1979). In the instant case, defendant is accused of failing to complete a home improvement contract, and while we view the statute dealing with the prohibited conduct strictly in his favor, we also note that the statute allegedly violated was a consumer protection statute, and we will endeavor to give effect to its policy and purpose. With this in mind, we review the trial court's exercise of discretion in instructing the jury on the violation of Ag 110.02(7)(b).

A trial court has wide discretion in issuing jury instructions. *State v. Pruitt,* 95 Wis. 2d 69, 80–81, 289 N.W.2d 343 (Ct. App. 1980) (no error to refuse special instructions even when they are not erroneous) ; *State v. Lenarchick,* 74 Wis. 2d 425, 455, 247 N.W.2d 80 (1976) (dealing with a refusal to give defendant's requested instruction) ; *Ingalls v. State,* 48 Wis. 647, 653, 4 N.W. 785 (1880) (it is a matter in the discretion of the trial judge whether he will instruct the jury to acquit the prisoner when there is no evidence of his guilt except the uncorroborated testimony of an accomplice). Furthermore, "[u]ltimate resolution of the issue of the appropriateness of giving particular instruction turns on

a case-by-case review of the evidence, with each case necessarily standing on its own factual ground." *Johnson v. State,* 85 Wis. 2d 22, 28, 270 N.W.2d 153 (1978) (review of trial court's refusal to give a requested specific instruction on the identification of the defendant and refusal to instruct jury on lesser included offense of second-degree murder). *Accord, State v. Dix,* 86 Wis. 2d 474, 486–87, 273 N.W.2d 250 (1979) ; *Kink v. Combs,* 28 Wis. 2d 65, 76, 135 N.W.2d 789 (1965). In viewing the facts and circumstances before it, a trial court may supplement jury instructions as needed. *State v. Asfoor,* 75 Wis. 2d 411, 432–33, 249 N.W.2d 529 (1977) (trial court could modify jury instruction to prevent jury from being misled by counsel's closing argument).

The record in this case reveals that the prosecution and defense offered evidence dealing with the communications between the parties concerning the failure of the defendant to diligently work on the project prior to the completion date. This colloquy involved notice to the buyer of reasons for the delay and failure to complete the home improvements. The defendant relied upon these excuses concerning noncompletion to escape criminal liability for failing to meet the time constraints of the contract. Once the matter of notice was introduced into the record, the trial court properly exercised discretion in determining that the jury should be instructed on the statute dealing with notice. This was not an abuse of discretion.

We note that the administrative regulation under which the defendant was charged [Ag 110.02(7) (b)] has not heretofore been judicially considered. Defendant asserts, and we would agree, that Ag 110.02(7) (b) prescribes that if work is not completed owing to reasons of "labor stoppage, unavailability of supplies or materials, unavoidable casualties, or any other cause beyond the seller's control," this serves as a statutorily stated affirmative defense precluding criminal liability. De-

fendant asserts that the jury instruction regarding timely notice served as a limitation on his affirmative defense of inclement weather and shortage of help and, in such regard, deprived him of his procedural due process guarantee to notice of the charge against him. In essence, defendant argues that the jury instruction, "the home improvement law requires that timely notice be given to the buyer of the home improvements informing the buyer of the reasons of the delay in performance and when the work will begin or be completed," broadened the elements of the charged offense to include the element of an uncharged offense, contrary to constitutional mandates. *See: Randolph v. State,* 83 Wis. 2d 630, 644, 266 N.W.2d 334 (1978) (instruction on injury by conduct regardless of life in error when defendant charged with first-degree murder) ; *Geitner v. State,* 59 Wis. 2d 128, 133, 207 N.W.2d 837 (1973) (instruction on false imprisonment cannot be included when defendant charged with crime of kidnapping). *Cf. Holesome v. State,* 40 Wis. 2d 95, 102, 161 N.W.2d 283 (1968) (court properly included instruction on endangering safety of another when defendant charged with first-degree murder).

The state responds that defendant was informed that he was charged with the violation of Ag 110.02(7)(b) and that the state is not seeking to impose criminal penalties for any violation of Ag 110.02(7)(c). According to the state, the challenged instruction was appropriate for two basic reasons: (1) The instruction on timely notice merely went to the defendant's credibility as to the uncontrollability of the reasons for the performance delay;[8] and (2) The instruction had no dele-

---

[8] We quote from the state's court of appeals brief in this case: "The issue for the jury to decide was whether the defendant's testimony that the reasons why he was not able to finish the work by April 15, were beyond his control was credible. The fact that he failed to notify Mr. Borda that the work would not be finished

terious effect because it was clearly set *outside* the elements of the charged offense.[9] The state concludes that even if the jury instruction were given in error, the error was harmless. *Chapman v. California,* 386 US 18, 24 (1967) (harmless beyond a reasonable doubt) ; *Larson v. State,* 86 Wis. 2d 187, 197, 271 N.W.2d 647 (1978) (verdict would have been different if error had not been committed) ; *Shelley v. State,* 89 Wis. 2d 263, 280, 278 N.W.2d 251 (Ct App 1979) (verdict might probably have been different if error had not been committed).

■

There is unfortunately, a dearth of history on Ag 110.-02 and no case precedent construing this section. We note that Ag 110.02(7)(b) and (7)(c) were both added in 1974. Construction of a statute in relation to a particular set of facts is a question of law. *Bucyrus-Erie Co. v. ILHR Department,* 90 Wis. 2d 408, 417, 280 N.W. 2d 142 (1979) ; *Wisconsin Bingo Supply & Equipment*

---

by April 15 tends to decrease the credibility of his story. The credibility of this excuse is further diminished by the fact that timely notice is not just a matter of courtesy, but a requirement of law." Respondent's Court of Appeals Brief at 3.

[9] We note that immediately after detailing the four elements of the charged offense and immediately preceding the instruction on timely notice, the court read the following instruction:

"If you are satisfied beyond a reasonable doubt that the state has established the four elements of this offense, you should find the defendant guilty. If you are not so satisfied, then you should find the defendant not guilty."

We note that in deciding whether a particular instruction deprived a defendant of his constitutional rights, the court must determine " 'the way in which a reasonable jury could have interpreted the instruction.' " *Ross v. Israel,* 503 F. Supp. 131, 133 (ED Wis. 1980) [*quoting Sandstrom v. Montana,* 442 U.S. 510, 514 (1979)]. Furthermore, " 'a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.' " *Ross v. Israel, supra* at 133 [quoting Cupp v. Naughten, 414 US 141, 146–47 (1973)].

*Co., Inc. v. Wisconsin Bingo Control Bd.,* 88 Wis. 2d 293, 308, 276 N.W.2d 716 (1979).

In construing a statute, the entire section and related sections are to be considered in its construction or interpretation. *State v. Phillips,* 99 Wis. 2d 46, 50, 298 N.W.2d 239 (Ct. App. 1980). Furthermore, a statute should be construed to give effect to its leading idea, and the entire statute should be brought into harmony with the statute's purpose. *Pella Farmers Mutual Insurance Co. v. Hartland Richmond Town Insurance Co.,* 26 Wis. 2d 29, 41, 132 N.W.2d 225 (1965). Sections of statutes relating to the same subject matter must be construed in pari materia. *Jung v. State,* 55 Wis. 2d 714, 720, 201 N.W.2d 58 (1972). *Accord, State v. Burkman,* 96 Wis. 2d 630, 642, 292 N.W.2d 641 (1980); *State v. Coble,* 95 Wis. 2d 717, 722, 291 N.W.2d 652 (Ct. App. 1980).

Most of the sections of Ag 110.02 define separate and distinct prohibitions. For example, Ag 110.02(7)(a) deals with the prohibition on tactics used to pressure a buyer into a home improvement contract.[10] We do not, however, view Ag 110.02(7)(b) and (7)(c) as being so unrelated. As we read those sections, both deal specifically with reasons beyond the seller's control for delay in performance beyond the contracted completion date. Subsection (7)(b) acknowledges and enumerates that there are statutorily identified reasons which, if shown to be "beyond the seller's control," will excuse a seller's failure to perform on time. Subsection (7)(c) requires the seller to give timely notice of those reasons to the buyer. Construing (7)(b) in isolation of the

---

[10] Wis. Adm. Code sec. Ag 110.02(7)(a) provides: "Performance. (a) Deliver materials, begin work, or use any other tactic to pressure the buyer into a home improvement contract, or make any claim or assertion that a binding contract has been agreed upon where no final agreement or understanding exists."

notice requirement would be unreasonable, and we must avoid such a result. "A statute should not be construed so as to work absurd or unreasonable results." *Estate of Evans,* 28 Wis. 2d 97, 101, 135 N.W.2d 832 (1965) (court held that proposed restrictive construction of conservatorship statute would defy its very purpose). *Accord, State v. Burkman, supra* at 642; *Wisconsin's Environmental Decade v. Public Service Comm.,* 84 Wis. 2d 504, 528, 267 N.W.2d 609 (1978).

Our analysis leads us to the concluding observation that notice is implicit in (7)(b). The buyer is entitled to know whether the seller is going to claim that circumstances beyond his control have resulted in the failure to complete the work on time. This information allows the buyer to make an informed decision whether to pursue an immediate remedy or whether to anticipate that the reasons for delay will be resolved and the project will be continued and will be completed on a date which is acceptable and reasonable to the buyer. We conclude the legislature intended to minimize problems for the buyer, and by requiring the seller to give notice of any defenses for nonperformance and a date for resumption and completion, the legislature intended to give the buyer the opportunity to make an informed judgment concerning the matter in the event a project is not completed on the contracted date.[11]

To adopt the defendant's argument, we would have to adopt a statutory construction in derogation of common

---

[11] As we perceive it, *not* requiring notice under Ag 110.02(7)(b) would leave a buyer in a state of limbo as to how to proceed in the event the job is not completed on time. If, for example, the buyer arranges for another contractor to complete the work, he may end up paying twice as the original contractor could later claim that circumstances beyond his control resulted in the delay, which may prove justified. Such a construction, that a seller has a defense but that a buyer does not have to know about it, would leave the buyer unprotected. This is clearly not what the legislature intended.

sense. We hold that statutes cannot be construed in derogation of common sense. Ag 110.02(7) is a consumer protection regulation. It requires a seller to complete a home improvement contract on a designated date. If a seller is unable to complete performance for reasons beyond his control, he may be excused from criminal liability *provided* that he gave timely notice of such reasons to the buyer. In order to give effect to the purpose of Ag 110.02(7), we read it in its entirety, and we conclude that the concept of timely notice is implicit in Ag 110.02(7)(b). We, therefore, hold that the challenged jury instruction on timely notice was entirely proper. The instruction does not run afoul of constitutional mandates to due process and adequate notice, and it does not deny the defendant the opportunity to prepare a defense.

In this case we have been called upon to review the trial court's discretion in giving a jury instruction, and consequently we have not dealt directly with the issue as to whether the legislature intended Ag 110.02(7)(b) and (7)(c) to constitute separate crimes. We would, however, observe that (7)(b) and (7)(c) in reality concern one offense (failure to timely complete a home improvement contract) and the statutorily designated defense to that offense (factors beyond the seller's control). If the defendant in this case had been separately charged and convicted for violations of both (7)(b) and (7)(c) with the imposition of separate penalties, the defendant might well have appealed claiming multiplicity of the charges.

Defendant also raises in his appeal the issue as to whether sec. 100.26(3), Stats., requires proof of intent. We have answered that question in the negative in *State v. Stepniewski,* 105 Wis. 2d 261, 314 N.W.2d 98 (1982).

*By the Court.*—The decision of the court of appeals is affirmed.

SHIRLEY S. ABRAHAMSON, J. *(dissenting).* I dissent. In its effort to uphold the convictions the majority

places an unreasonable construction on Ag 110.02(7)(b) and (c), Wis. Adm. Code.[1]

The majority, like the court of appeals, holds that the notice requirement of Ag 110.02(7)(c) is implicitly incorporated in Ag 110.02(7)(b) and that regulation Ag 110.02(7)(b) and Ag 110.02(7)(c) must be read together to mean that if the defendant does not give timely notice to the consumer of the reasons for delay, these reasons do not constitute a defense to the crime. See page 245 and note 11. The majority reasons that "[c]onstruing (7)(b) in isolation of the notice requirement [of (7)(c)] would be unreasonable," *supra* p. 244, because the needs of the consumer require that the notice provision of Ag 110.02(7)(c) be read into Ag 110.02(7)(b). Nonetheless the majority, like the court of appeals, refuses to state whether subsections Ag 110.02(7)(b) and (c) define a single offense or two offenses.

The majority's reading Ag 110.02(7)(b) and (c) together has no basis in the wording of the regulations. As the majority notes most sections and subsections of Ag ch. 110 set forth separate offenses. The wording of Ag 110.02(7)(b) and (c) clearly sets forth two offenses:

---

[1] Ag 110.02(7)(b) and (7)(c) provides as follows:

"Ag 110.02 Prohibited trade practices. No seller shall engage in the following unfair methods of competition or unfair trade practices:

". . .

"(7) PERFORMANCE. . . .

"(b) Fail to begin or complete work on the dates or within the time period specified in the home improvement contract, or as otherwise represented, unless the delay is for reason of labor stoppage, unavailability of supplies or materials, unavoidable casualties, or any other cause beyond the seller's control. Any changes in the dates or time periods stated in a written contract shall be agreed to in writing.

"(c) Fail to give timely notice to the buyer of reasons beyond the seller's control for any delay in performance, and when the work will begin or be completed."

(1) failure to complete the work within the time period specified in the contract unless one of the justifications specified in the regulation occurs, that is "labor stoppage, unavailability of supplies or materials, unavoidable casualties, or any other cause beyond the seller's control," Ag 110.02(7)(b); and (2) failure to give timely notice to the consumer "of reasons beyond the seller's control for any delay in performance," Ag 110.-02(7)(c). Ag 110.02(7)(b) makes no reference to notice. The court of appeals reads the notice of requirement of Ag 110.02(7)(c) into (b) reasoning that the notice requirement is implicit in the last sentence of Ag 110.02 (7)(b). While the majority is correct in rejecting the reasoning of the court of appeals, it is then left without any vehicle in the wording of Ag 110.02(7)(b) for incorporating the notice requirement of (c) into (b).[2]

Further, the majority's reading Ag 110.02(7)(b) and (c) together is not required to render the regulations reasonable or to avoid an absurd or unreasonable result. Ag 110.02(7)(b) and (c) can be read as separate offenses because two separate acts (or omissions) of the contractor are proscribed and two separate interests of the consumer are protected by these regulations: (1) The

---

[2] The court of appeals concludes that the last sentence of (7)(b) requires that as part of the contractor's defense of justifiable delay the contractor and the consumer must agree to a new contract setting forth starting and completing dates. The court of appeals then concludes that notice of delay is implicit in the requirement of the written agreement. Thus the court of appeals sets forth three elements of a contractor's defense: (1) the contractor must have a justifiable reason for the delay; (2) the contractor must notify the consumer of the reasons for the delay; and (3) the contractor and consumer must successfully negotiate a written agreement as to new dates of starting and completion. The court of appeals' reasoning leads to the absurd result of the consumer being able to wield the power of deciding whether the contractor can be convicted of a criminal offense. By not agreeing to a new written agreement the consumer can vitiate any defenses based on justifiable delay the contractor may have had.

contractor's failure to perform timely is penalized; the consumer's interest in getting prompt performance is protected. Ag 110.02(7)(b). (2) The contractor's failure to keep the consumer advised is penalized; the consumer's interest in being kept informed is protected. Ag 110.02(7)(c). Under this interpretation, if a contractor does not have any valid reason for delay and does not notify the consumer of any reason for the delay, the contractor may be prosecuted for failing to obey both Ag 110.02(7)(b) and Ag 110.02(7)(c); if a contractor has a justifiable reason for delay but does not give timely notice to the consumer the contractor may be prosecuted for failing to obey Ag 110.02(7)(c); if a contractor notifies the buyer of the reasons for delay but those reasons are not justifiable, the contractor may be prosecuted for failing to obey Ag 110.02(7)(b). The majority may not think the regulations creating two offenses are wise, but it is not the court's job to rewrite the regulations if they can be read as written.

The majority's reading Ag 110.02(7)(b) and (c) together and at the same time refusing to decide whether these regulations constitute one or two offenses creates confusion for prosecutors, defense counsel and courts. The majority hints that separately charging, convicting and penalizing for violations of both (7)(b) and (7)(c) raises a question of multiplicity. *State v. George*, 69 Wis. 2d 92, 230 N.W.2d 253 (1975); Wright, *Federal Practice and Procedure—Criminal* sec. 142 (1969). If there is a problem of multiplicity, it is of the majority's own making. The majority refuses to decide whether Ag 110.02(7)(b) and (c) are single or multiple offenses and mixes the elements of (c) with those of (b). The majority thus creates confusion as to the proper approach to charging under the regulations.

Because I am unable to discern a reasonable rationale for the majority's decision beyond a desire to uphold the convictions in the case at bar, I dissent.