Raymond CLAUSEN, Petitioner,

v.

CLERK OF CIRCUIT COURT OF MIL-
WAUKEE COUNTY, Hon. Michael
Skwierawski, Presiding, and Bronson La
Follette, Attorney General of the State
of Wisconsin, Respondents.

Raymond CLAUSEN, Petitioner,

v.

CLERK OF CIRCUIT COURT OF MIL-
WAUKEE COUNTY, Hon. Patricia S.
Curley, Presiding, and Bronson La Follette, Attorney General of the State of
Wisconsin, Respondents.

Civ. A. Nos. 82–C–10, 82–C–12.

United States District Court,
E. D. Wisconsin.

May 6, 1982.

**1234**

William J. Tyroler, Asst. State Public Defender, Milwaukee, Wis., for petitioner.

Jeffrey M. Gabrysiak, Asst. Atty. Gen., Wis. Department of Justice, Madison, Wis., for respondents.

## DECISION and ORDER

TERENCE T. EVANS, District Judge.

Raymond Clausen has filed two petitions, consolidated by order of January 19, 1982, for the issuance of writs of habeas corpus.

In Case 82–C–10 Clausen attacks his September 11, 1978, guilty plea in state court to one count of home improvement fraud, for which he was placed on probation. His probation was subsequently revoked because of an October 9, 1979, conviction, again for home improvement fraud. The 1979 conviction is the subject of his petition in 82–C–12. The sentence resulting from the probation revocation was nine months imprisonment at the Milwaukee County House of Correction, the sentence he is currently serving; the sentence following the second conviction was a four month term of imprisonment; that sentence was stayed.

In seeking release from imprisonment, Clausen relies primarily on errors he believes were committed in his 1979 trial. He claims that his probation in the earlier case was revoked solely because of the second conviction; and that if habeas relief is granted in regard to the second conviction, the petition in 82–C–10 becomes moot.

Clausen's claim in 82–C–12 is that his constitutional right to notice of the charge against him was infringed when he was charged with a violation of one section of the Wisconsin Administrative Code, Ag 110.02(7)(b), and the jury was instructed on a separate section, Ag 110.02(7)(c). The regulations are as follows:

*Ag 110.02 Prohibited trade practices.* No seller shall engage in the following unfair methods of competition or unfair trade practices:

.     .     .     .     .

. (7) . . .

(b) Fail to begin or complete work on the dates or within the time period specified in the home improvement contract, or as otherwise represented, unless the delay is for reason of labor stoppage, unavailability of supplies or materials, unavoidable casualties, or any other case beyond the seller's control. Any changes in the dates or time periods stated in a written contract shall be agreed to in writing.

(c) Fail to give timely notice to the buyer of reasons beyond the seller's control for any delay in performance, and when the work will begin or be completed.

Clausen was charged with a violation of Ag 110.02(7)(b), which, on its face, has no requirement for notice. At trial, after the close of the evidence, the state submitted to the court a proposed jury instruction embodying the subsection (c) requirement that the seller give notice to the buyer of reasons for delay. Clausen objected to the instruction on the basis that he had not been informed that that requirement was a part of the charge and had not prepared or offered a defense on the element. The trial judge determined that the instruction would be given.

The prosecutor's closing argument emphasized that Clausen had failed to notify the buyer of delay in completing the project. He stated:

. . . So the law says, look, these things occur; there are weather problems; there

are labor shortages; but if those problems occur, then the person who is going to rely on that as a defense is going to have to give, he calls it, timely notice, timely notice to the buyer of the reasons for the delay.

Timely notice is very simple: It means picking up the telephone and calling Mr. Borda before April 15th and saying, sorry, I got problems; I can't do it. Not only doesn't Mr. Clausen do that, not only does he not call Mr. Borda, but when Mr. Borda calls him, he is too busy watching the television set to take the call. Tr. at 93.

This argument was based on the testimony of both the buyer and Clausen that the buyer, Mr. Borda, had called about the improvements. During the trial the prosecutor had forestalled any testimony from Clausen that Clausen had initiated conversations with the buyer:

Q Now, it's your—you recall Mr. Borda calling you on numerous occasions; is that correct?

A He had called me several times.

Q And you explained to him that you were unable to finish the work; is that right?

A Yes, and I personally stopped by to see him.

Q Mr. Clausen,—

MR. HERMAN: Your Honor, could you instruct the witness to just answer the question.

THE COURT: Yes. Mr. Clausen, I know there is a tendency to want to volunteer information; why don't you just listen to that question that is asked of you and try to answer that one as best you can, please. Tr. at 62.

The jury was instructed that the crime in question had four elements, each of which had to be proved by the state beyond a reasonable doubt. The elements were: (1) that the defendant was engaged in work involving home improvement; (2) that the defendant entered into a home improvement contract with an owner, tenant, or lessee of residential property; (3) that the defendant represented when he would be-

gin or complete the improvement; and (4) that the defendant failed to begin or complete the work within the represented time.

After the elements of the crime were explained, the judge told the jury:

"The home improvement law recognizes that there may be reasons beyond the control of the seller of home improvements which delay his performance of the work. However, the home improvement law requires that timely notice be given to the buyer of the home improvements informing the buyer of the reasons of the delay in performance and when the work will begin or be completed."

There was no direction to the jury about whose burden it was to establish that notice was or was not given, or whether notice was another, previously unmentioned, element of the crime.

Clausen was convicted. Upon appeal, the Wisconsin Court of Appeals in an unpublished opinion affirmed the conviction, stating, among other things, that the last sentence of subsection (b) requires that as a part of a defense of justifiable delay, the contractor and the consumer must agree to a new written contract setting forth new completion dates.

On appeal to the Wisconsin Supreme Court, the Court of Appeals' interpretation of the regulations was generally rejected, but the conviction was nevertheless upheld. *State v. Clausen*, 105 Wis.2d 231, 313 N.W.2d 819 (1982). The Supreme Court stated that "... (7)(b) and (7)(c) in reality concern one offense (failure to timely complete a home improvement contract) and the statutorily designated defense to that offense (factors beyond the seller's control)." *Id.* at 246, 313 N.W.2d 819. The court held that "notice is implicit in (7)(b)." Section 7, the court said, requires a seller to complete a home improvement contract on time. If a seller is unable to complete the performance for reasons beyond his control, "he may be excused from criminal liability *provided* that he gave timely notice of such reasons to the buyer." Therefore, although the Supreme Court affirmed the decision of

the Court of Appeals, it gave a different interpretation to the regulations than had the intermediate court.

Clausen argues that his due process right to notice of the charges against him was violated. He argues that if notice is an additional element of the offense, his rights were violated by the absence of reference to notice or to subsection (c) in the written charges against him. Conversely, if notice is not an element of the offense, he was deprived of due process because the previously unconstrued regulatory scheme did not inform him that his defense—that delay was due to factors beyond his control—was conditioned upon compliance with subsection (c). In effect, he is saying that before the Wisconsin Supreme Court revealed the relationship between subsections (b) and (c) and indicated that notice was implicit in subsection (b), although possibly not an element of the crime, it was not clear from the complaint charging a violation of subsection (b) that failure to give notice was an issue either as an element of the crime or as a prerequisite to an affirmative defense.

■ Within constitutional limitations, a state is permitted to define its own crimes and to set forth affirmative defenses to those crimes. *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). The Wisconsin Supreme Court, in this its first construction of the statute in question has set forth the elements of the crime, and has determined that an affirmative defense exists if reasons beyond the seller's control prevented completion of the project and if the seller gave the buyer notice of the reasons. This analysis places the difficult questions into the category of an affirmative defense and leaves as elements of the crime matters which are relatively simple to prove. It also seems, at least at first glance, to have shifted an element of the offense described in subsection (c) to the status of an affirmative defense under subsection (b). Nevertheless, Clausen has not argued that this interpretation of the regulation violates due process. Therefore, I will not pursue an analysis of the issue.

However, I agree with Clausen's statement that he was not informed of the charges against him and that he could not have anticipated the court's interpretation of the regulatory scheme.

■ The Sixth Amendment of the United States Constitution requires that a defendant be informed of the charges against him. A charging document must meet minimum requirements. It must adequately inform a defendant of the charges so that he can prepare his defense and it must establish a record that shows whether double jeopardy would bar a subsequent proceeding. *Russell v. United States*, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); *Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974). In order to adequately inform a defendant of the charges against him, a charging document must inform a defendant of the offense with sufficient clarity so that he will not be misled while preparing his defense. *United States ex rel. Harris v. State of Illinois*, 457 F.2d 191 (7th Cir. 1972).

■ The next defendant prosecuted under these regulations is perhaps now informed that giving notice is a prerequisite to an unavoidable delay defense under subsection (b). It is a violation of the Sixth Amendment, however, to expect Clausen to have known it was required at his trial. The trial court, the Court of Appeals, and the Supreme Court all have somewhat different reasons for requiring that Clausen give the buyer notice. The inartfully drawn regulation on its face says nothing about notice. Furthermore, even had the law been clear, in the jury instruction given at Clausen's trial, no explanation is given as to who must prove that notice was or was not provided. The jury instruction quoted above simply stands alone, unexplained. In addition, the prosecutor first refused to let Clausen testify about stopping to see the buyer and then argued that Clausen should be convicted because he did not telephone the buyer to notify him of a delay.

Clausen's Sixth Amendment rights were violated during his 1979 trial and his peti-

tion in case 82–C–12 is granted. The state, of course, may retry Clausen on the charge if it so desires.

I have examined the grounds for relief alleged, but not actually argued in case 82–C–10, and found them to be without merit. His guilty plea in that case was, in my opinion, constitutionally antiseptic. Because, however, the sentence he is now serving in the 82–C–10 case was imposed following a probation revocation grounded upon the now vacated conviction in the 82–C–12 case, his petition, in 82–C–10, to the extent that it seeks release from custody, is granted.

Therefore, consistent with this opinion, the petitioner is ordered released from custody. The state may retry Clausen in case 82–C–12 and/or commence new probation revocation proceedings in case 82–C–10. SO ORDERED.